## Star Mills v. Bailey.

(Decided October 11, 1910.)

## Appeal from Daviess Circuit Court.

1. Corporations—Trading Corporations—Authority to Borrow Money. A trading corporation may borrow money when not interdicted by its charter, and it may execute its note to evidence the debt.

2. Same—Acts of Officers.—A corporation, even a trading corporation, acts only through its officers actually empowered to do so, or by the acts of those permitted by it to do the thing in question.

3. Same—Inherent Power to Borrow Money.—The president of a corporation has not the inherent power to borrow money and execute a note in its behalf; such power must be delegated to him either by the by-laws or resolution of its governing body, or by its charter, or by its custom of dealing.

4. Delegated Power—Official Meeting of Board.—A corporate body of directors must act as a board in order to bind the corporation. When a board can delegate a power and intends to do, so, it should act in an official meeting and by its records.

5. Corporation Directors.—A corporation being artificial can only act in the manner allowed by law. Being distinct from its directors, their acts are not its acts unless they act in the manner required by law.

6. Promissory Note of Corporation.—More is needed to make a promissory note of a corporation than the signature of the corporate name by its president. His authority must be shown. That lacking, the proof of the execution of a note, as a valid promissory note, fails.

7. Evidence—Diary—Aid to Memory—Relevancy.—While a diary is not evidence, it may be referred to by a witness to refresh his recollection as to where he was on a certain day, and if when so refreshed he could remember and say that he was not at the place testified to by an adversary witness, the testimony is not only relevant, but generally a reliable means of refreshing his recollection.

8. Burden of Proof—Failure to Call Sustaining Witness.—The failure of one having the burden to call a witness who participated with him in the transaction in litigation, or to explain his failure, is a circumstance from which it is allowed to infer that such witness would not sustain the party.

9. Directors—Dealing with Corporation.—The rule of the law is not to prevent directors of a corporation from dealing with it, but to prevent them from claiming to have done so when they had not, as well as to prevent their overreaching the trust they had essayed to protect.

10. Good Faith—Record Establishing—Preservation.—It being so easy to act in accordance with the law so as to preserve every neces-

sary record to establish the good faith and consideration in the transaction, a failure to keep such record by one whose duty it is to keep it, ought to stand as evidence against one who attempts to assert a claim against a corporation in the absence of some other convincing evidence.

11. Corporation—Notes Issued by President—Ratification.—Not only must it have been .the custom of a corporation to issue its notes by its president alone, but the corporation must have ratified his act by acquiescence after knowledge of the fact, or by confirming it without question. Custom cannot arise out of a single transaction.

C. W. WELLS and W. FOSTER HAYS for appellant.

WATKINS & BIRKHEAD for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant is a manufacturing and trading corporation. Appellee was a stockholder, as well as secretary and treasurer of the corporation, and in March of 1906 one Newton was its president. At that time it was needing money. It had, as it was empowered by its charter to do, authorized the issual and sale of two thousand dollars of preferred stock at par. Newton offered for the company to sell appellee Bailey five shares of the preferred stock at par.

Bailey on June 1, 1906, paid on account of the corporation $500 of its debts. One Vanarsdall had succeeded Newton as president. A note for $500 was then executed by Vanarsdall to Bailey for $500, secured by a pledge of five shares of the preferred stock of the corporation. The order of the board of directors authorizing the sale of the preferred stock, and the charter of the corporation, provided that such stock should bear six per cent. per annum interest, which should be paid before any dividend was paid on the common stock, and upon liquidation of the corporation the holders of the preferred stock were to be paid in full, with six per cent. per annum interest as dividends, before holders of common stock received anything. The certificates of the preferred stock also contained the foregoing provision.

Appellee brought suit against appellant upon the note of $500. The answer was a plea of non est factum. It also set out what was claimed to be the real transaction, namely, that appellant sold appellee the five shares of preferred stock in March of 1906, the certificate being

then signed and left in the stock book until paid for, and was then delivered to appellee. The reply was a traverse of the affirmative plea. Upon this issue two witnesses only were called. One was appellee Bailey. The other was Newton, the former president. The action was in equity, owing to the allegations and prayer of the petition seeking a sale of the alleged collateral. The judgment was in favor of appellee Bailey upon the note, subject to certain credits which will again be adverted to, and cancelled the stock certificate. This appeal is from that judgment.

The question for decision is mainly one of fact. The chancellor's finding on the facts, treated as cases in equity always, is given the weight which is accorded from his superior opportunity for knowing the witnesses and their credibility. Still, if the burden was so that even that consideration would not be enough to preponderate in appellant's behalf the judgment ought not to stand.

A trading corporation may borrow money when not interdicted by its charter. It may execute its note to evidence the debt so made. A corporation, even a trading corporation, acts only through its officers actually empowered to do so, or by the acts of those permitted by it to do the thing in question. The former is the strictly legal way in which the corporation acts. The latter may bind it, not because they are empowered to do so, but because having been held out or suffered to act in such capacity on the corporation's behalf so that those dealing with it are misled into the belief that the officers are so empowered in fact, the corporation is estopped to deny their legal authority.

The power of this corporation to borrow the five hundred dollars ($500), and to execute its note for it is beyond all dispute. Whether it did borrow the money and execute its note is the question of fact to be decided. The president of a corporation has not the inherent power to borrow money for it, and to execute a note on its behalf. Such power must be delegated to him either by the by-laws or resolutions of its governing body, or by its charter, or by its custom of dealing. There is nothing in the charter or by-laws of appellant authorizing its president to act in that behalf. Nor was there a resolution of record to that effect made by its governing body, which is its board of directors. The transaction

acording to the testimony of appellee, was that Newton, Vanarsdall, and Bailey (appellee) constituting the board of directors met on June 1, 1906, at the company's place of business, discussed the need of $500 for the corporation's use, and borrowed that sum from appellee Bailey, for which the note sued on was executed, and the stock put up as collateral. No record was made of the meeting, although the corporation kept a book in which was recorded the acts of its board. A corporate board of directors must act as a board, in order to bind the corporation. When a board can delegate a power and intends to, it should act in an official meeting, and by its records. If this were not so, unofficial, casual meetings of the men who constituted the board, and parol statements thereat, would be the warrant on which would be bound the stockholders whom they represented. That is what might have been done by a co-partnership. But a corporation is a different thing from a co-partnership. The law creating it distinguishes between the two in several particulars, one being the manner of acting. The corporation being artificial, it can act only in the manner allowed by law. Being distinct from its directors, their acts are not its acts unless they act in the manner required by law. Therefore in delegating power to an officer, strictly it speaks by its record. It is true that it may by custom become estopped, as already remarked, and may be held for acts of its officers ultra vires when it has subsequently ratified them, or has accepted the benefits of the unauthorized act. But as that latter feature of corporate action is not raised in this case, it need not be noticed further. This transaction was not with a stranger unacquainted with the corporation's records, and not knowing the power of its officers. It was just the contrary. Appellee was himself the official to make and keep the records, as well as one of the board of directors and a stockholder. Hence, if it is ever to be again asserted that a corporation should act by its proper officers, and speak by its record, this is the case in which to say it. So, there was not a record of the alleged loan, and none of the authority of president Vanarsdall to execute the note.

Aside from the view just advanced, Newton testified that there was not a meeting of the board of directors on June 1, 1906, or at any time, in which it was proposed or agreed to borrow the five hundred dollars ($500) from appellee, at which witness Newton was present.

Vanarsdall did not testify. Thus is presented the very evil which the rule requiring corporate action to be generally of record was intended to avoid. If it be conceded that the record was not essential—was merely convenient and valuable, and the fact in dispute might be established by parol, and if it also be conceded that the two witnesses are equally credible, the evidence is balanced. The burden was on the plaintiff, appellee. The plea of non est factum so placed it as to the execution of the note, and the traverse in the answer of the allegation in the petition that the note was for money loaned the defendant so placed it with respect to the alleged consideration (which might have been recovered in this action as for money had and received, notwithstanding the invalidity of the note). It is true, it is proved that Vanarsdale signed the note, that it was his genuine signature. But more is needed to make a promissory note of a corporation than the signature of the corporate name by its president—his authority must also be shown. That lacking in this case, the proof of the execution of the note as a valid promissory note, fails. The note, then, imports nothing—raises no presumption of consideration, as would a valid note, shifting the burden to the maker to prove lack of consideration.

Conceding that the trial court had such acquaintance with the witnesses as to give greater weight to the testimony of Bailey than to that of Newton, that is only a weight arising from character, and not because of the matter testified to. Though Bailey be believed to possess the greater probity, it does not necessarily follow that Newton's testimony is not true. For there are other tests of veracity than that of reputation or probity. Bailey's interest in the result of the trial is greater than is that of Newton. If Bailey loses he loses $500, should the corporation prove to be insolvent. If the corporation loses, Newton loses about half of that sum in any event, and if the corporation is insolvent, perhaps nothing. Bailey's bias is probably greater. Everybody knows the effect of the bias of self-interest on even honest men's understanding.

The stock certificate is dated March 26, 1906. Newton was then president of the company. His name is signed to the certificate as president. He testified that it was filled out and signed on the day it bears date, and left in the stock book to be delivered when paid for; that Bailey told him that he could not pay for it until he col-

lected a time certificate of deposit not then due; that the stub shows that it was detached and delivered on June 1, 1906, Bailey's receipt of that date being thereon; that on that day Bailey told him that he had paid in the $500, and the certificate was accordingly torn out of the book and delivered to him.    Bailey testified that the stock certificate was signed and left blank as to number of shares and the person to whom issued; that there was but the one certificate in the book, and on June 1, when he, Vanarsdall and Newton agreed to the loan, it was agreed to place the stock as collateral, and that certificate was then used, its blanks being then filled in.    While it is true that a corporation cannot pledge its own stock to secure its own debt, and that it would be a wholly useless and worthless proceeding if it could, Bailey testified that he was not aware of that fact.    But Newton's knowledge of law and business seems to have been better. Bailey was paid two dividends on this stock by the corporation.    The payments are not indorsed as interest paid on the note, indicating that Bailey when he received the dividends regarded that he owned the stock.

Newton kept a diary.    With it before him he was enabled to say that he was not in Owensboro the first of June, 1906, the day the note is dated, and when appellee says the transaction occurred.    While the diary is not evidence, it may be referred to by the witness to refresh his recollection as to where he was on a certain day, and if when so refreshed he could remember and say that he was not at the place testified to by the adversary witness, the testimony is not only relevant, but the circumstance indicates a carefulness of habit, and a ready and generally reliable means of refreshing the recollection.    The receipt on the stub of June 4, 1910, corroborates, in a measure, the statement, and seems to sustain the accuracy of the recollection of the witness Newton.

The transaction is extraordinary.    The method pursued by the board of directors was crude, if it occurred as claimed by appellee.    The pledging of the shares as collateral showed an ignorance of business laws.    If the stock was in fact sold to Bailey, then the execution of the $500 note was to say the least of it, equally futile. Vanarsdall, who was president of the company when the note was executed, had parted with his interest in the corporation and resigned his office before this trial.    He could have explained the transaction.    But he was not called, nor was the failure to call him explained at the

trial. If he was accessible it was to the interest of Bailey to produce him as a witness to sustain his act, if he could sustain it. The failure of one having the burden to call a witness who participated with him in the transaction in litigation, or to explain his failure, is a circumstance from which it is allowed to infer that such witness would not sustain the party. It was presumably within Bailey's knowledge what his co-adjutor knew. The transaction if it occurred as appellee claims, is so extraordinary, and contrary to the course that business men of ordinary capacity usually pursue, that some explanation of it consistent with his present claim was in order. His own explanation, unsustained and contradicted, leaves it as it appeared in the beginning.

On the other hand, Newton's version is not improbable. The company's course in borrowing money and executing notes was to have a resolution of the board duly entered, authorizing the act. This transaction, if appellee's version is to be accepted, was a departure from the usual course. Appellee being a director of the corporation, could not alone bind it in his own behalf, nor could he and one other—there being three directors —constitute a quorum of the board for that transaction. Hence, it was necessary for him to show that Vanarsdall was present and acting. In that he failed. Being a director of the corporation, he might nevertheless have loaned it money, and have taken its binding obligation to repay it. But when he asserts that such was the fact, and exhibits what purports to be the company's note to himself, inasmuch as he was acting in a dual capacity, representing himself against himself as trustee as it were, the presumption is unfavorable to him, and, upon his act being called in question by the corporation, the burden is imposed on him to show by a preponderance of proof that he acted bona fide, and that the corporation got the benefit of his act to the extent charged. This rule of the law is not to prevent directors of a corporation from dealing with it, but to prevent them from claiming to have done so when they had not, as well as to prevent their overreaching the trust which they had essayed to protect. Being so easy to act in accordance with the law so as to preserve every necessary record to establish the good faith and consideration in the transaction, a failure to keep such record by one whose duty it is to keep it, ought to stand as evidence against him when he attempts to assert a claim against the cor-

poration in the absence of some other convincing evidence.

There appears of record no reason for discrediting Newton save such bias as he might have owing to his interest as a majority stockholder in the appellant corporation. His manner of testifying, so far as the deposition can show that fact, and it shows it to us the same way as was done to the trial court, is frank, and his statements clear and consistent. He is sustained in so many particulars, each small it is true, that the probability of his story, its naturalness, appears greater than that of the other witness. Besides, the presumptions and burdens of the law imposed upon the latter because of his attitude as party in the record, and as director dealing with himself in the corporation, must be given weight against him, or they are worthless as presumptions of law. When given their proper legal effect, some evidence to overcome them is required, for if the evidence otherwise is equally balanced, the party against whom is the burden of the case loses. Whether the evidence was so applied we cannot know. The trial court did not indicate the ground upon which the judgment was rendered. In argument, appellee's counsel invoke the familiar rule that the chancellor's finding of facts will not be disturbed unless contrary to the weight of the evidence. If the chancellor found the fact to be that the note was executed at a meeting of the board when the three directors named were present, or that the transaction was a loan of $500 to the corporation, instead of a payment to it of $500 in consideration of appellee's purchase of the five shares of preferred stock, then it was, in our opinion, contrary to the weight of evidence.

It was attempted to be shown that appellant was accustomed to issue its notes by its president and without action of its board of directors. While Newton was president that was done once, in settlement of a small debt for wheat about which there was a controversy. While Vanarsdall was president two or three notes were executed in that manner, but all were contested by the corporation. Not only must it have been the custom of the company to issue its notes by its president alone, but the company must have ratified his act by acquiescence after knowledge of the fact, or by confirming it without question. Custom cannot arise out of a single transaction; nor can it be said that the corporation was in the

custom of issuing its notes by the act of the president alone, when in each instance shown it repudiated his act as soon as discovered, and contested its liability on that account.

It is said for appellee that appellant received his money, and got the benefit of it, therefore that it should repay the money although the note was not executed in a legal manner, and although Vanarsdall was not authorized to act in the manner. If the issue had been solely whether the note was the act of the corporation, and the consideration therefor, there would be ample authority to grant the relief suggested. But the issue was also whether the $500.00 was paid as consideration for the stock. Upon that we find the stock issued, receipted for by appellee, authorized by the board of directors and the company's charter, two dividends declared on it, and paid to appellee, and by him received as dividends. If this were a suit to enforce against him a stockholder's liability and he was defending upon the facts presented in this case, we would have little hesitancy in holding that he was bound. Meagre as the evidence is, his theory failing for want of proof, and there being some evidence on the other side, we are left no alternative but to declare that he bought the stock, although it must be admitted, the fact is not free from doubt. But such is the preponderance of the evidence.

Judgment reversed, and remanded for judgment in conformity herewith.