## Springfield Fire & Marine Ins. Co. et al. v. Ramey.

(Decided June 7, 1932,)

368

GORDON, LAURENT & OGDEN and FRANK M. DRAKE, and LOW & BRYANT for appellants.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal requires a review of a trial by a jury, in which a verdict was returned finding the insured's building which was destroyed by fire, ·was a total loss, and the recovery against the several appellants was fixed at the sum of $13,500, the face of· the several policies.

The appellants have asked this court to review its former opinions construing and applying section 762a-22 Ky. Stats. This section of the statute as it relates to the facts of this case was amended in 1916. The original act as amended has heretofore been considered and applied by this court in many cases. No additional authority or reason has been presented sufficiently convincing to warrant the court to give to the

section a construction different from that reported in our former opinions.

The appellants elaborately and forcefully urge, as grounds for reversal, that the court committed an error in refusing to direct a verdict in their favor; the admission of evidence in behalf of the appellee; refusing to give to the jury their offered instruction, and in the giving of those which were given by the court. We are required to determine both the competency and sufficiency of the evidence received by the jury in behalf of the appellee and the propriety of the given and refused instructions.

The first witness heard in behalf of appellee was Thurman Powers. Without asking him to state any facts upon which he based his opinion, he was asked: "As a builder, you tell the jury if in your opinion that building is a total loss?" And without stating the facts, he responded: "It is in my opinion a total loss, yes sir."

J. F. Underwood next testified. Without stating any facts upon which he rested his conclusion, he was asked:

"Considering that a total loss known to the law is that instead of repairing that building, the damaged parts, a reconstruction of the whole would be necessary to restore the building to its former condition, although the building may have some value as debris or salvage, would you say that building was a total loss? A. Yes sir."

Then Thurman Powers was recalled and was asked and answered as follows:

"Is that building in such a condition as to be unsafe and useless as a building, to require that the walls and whatever is standing there be taken down in order to restore it to its original condition? A. Yes sir, it would."

R. W. Johnson, also without disclosing the facts upon which he based his conclusion, was asked and answered this question:

"Considering that a total loss under the law means where a building is so far injured as what remains is of no material value as a building

though it may have value as debris or salvage, would you say that building was a total loss? A. Yes sir."

F. L. Rennebaum was asked and answered as follows:

"Tell the jury whether or not, in your opinion, what is left of that building up there could be used for the purpose of restoring it, building to it, to its original condition, or would it be necessary to tear everything away that is there in order to restore that building to its original condition?"

In answering, he stated that:

"I would have to form my opinion from my past experience in my own remodeling. I just got through remodeling this building I was speaking of awhile ago; when I got through with the building I found it cost me more to remodel the building than it would have if I had begun to build a new building on a vacant lot. On this building up here after going through it thoroughly I have come to the conclusion that the only thing of value is salvage—and the foundation. If you were going to rebuild that you would have to remove the salvage, it would be worth more to remove the salvage than the actual value of the foundation that is there; this foundation is laid in the old fashioned mortar and—"

The court sustained a motion to exclude his answer. Thereupon the court himself propounded this question to him, to which he answered as follows:

"The Court: The question is, whether what is left there now would be worth anything to a person going in there to reconstruct that building and put it back in as good condition as it was before. Could the material there now be used for the purpose of reconstructing that building and putting it back in the condition it was before? A. I don't consider that the material there has any value at all."

To W. E. Dance these questions were propounded:

"As that building stands there from the effects of that fire could what is left of that building there

be used as a building to build to and restore that building as good as it was before, or in restoring it as good as it was before, would it be necessary to tear away what is there and build from the ground up? A. I would tear it down if it was mine."

"Q. Is it worth anything what is there as a building to build to? A. No sir."

He made no statement of fact before answering them.

H. L. Cowan was asked:

"As a contractor and builder, if you were to start in to restore that house to a condition as good as it was before, would it be possible to use that stuff as it stands now in reconstructing and making it as good as it was before, or would it be necessary to tear away what is there and make an entire new structure?"

And he answered:

"The cheapest in my judgment would be to tear it away and start a new building."

The appellants objected to these questions when propounded and to these answers when made. Their objections were overruled, to which they reserved exceptions. No other evidence was offered in chief by the appellee, except that which was developed on cross-examination of appellee's witnesses by the appellants. The appellants succumbed to the inviting temptation, which often presents itself to opposing counsel, to cross-examine the other party's witnesses, and thus aided in the development of the facts. With the evidence appearing as it is in the record, and thus brought in, it cannot be claimed that no competent evidence was presented authorizing the submission of the issues to the jury. Yates v. Mullins, 233 Ky. 781, 26 S. W. (2d) 757; Travelers' Insurance Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630, and cases cited.

The appellants did not stand on their right to a peremptory instruction at the close of the evidence in behalf of the appellee, but, on the court's refusing it, they proceeded to introduce their evidence. Under the prevailing rule, the court properly submitted the issue

to the jury. L. & N. R. R. Co. v. Jolly's Adm'r, 232 Ky. 702, 23 S. W. (2d) 564; Terrell v. Sou. Ry. Co., 225 Ky. 645, 9 S. W. (2d) 993; Armstrong v. Vest, 223 Ky. 444, 3 S. W. (2d) 1073; Powell v. Galloway, 229 Ky. 37, 16 S. W. (2d) 489.

The only evidence offered by the appellee other than that developed by the appellants on cross-examination of her witnesses was mere opinions of the witnesses, expressed in response to improper questions. It is a wise and salutary rule that a witness must testify to facts within his knowledge and not a mere conclusion, except experts in response to hypothetical questions which must embrace the facts. To this general rule there is another exception which permits the admission of opinion evidence, not conclusions, when from the very nature of the subject-matter under investigation no better evidence can be obtained. If it were a general rule that a witness might be allowed to testify to a mere opinion, conclusion, or inference which he may entertain concerning the facts in issue, trials before a jury would be little less than a farce. With the recognized rules of evidence ordinarily observed by the law, even where rigidly enforced by the courts, it is a matter of general knowledge that the bias, ignorance, and disregard of the truth by witnesses are not only a hindrance, but a real obstacle to, and oftentimes defeat, the administration of justice. If a rule that a witness must state facts known to him is observed by the courts, and the witness is required to state the facts, and knowingly perverts them, he may be indicted and convicted of perjury, but, if he is not required to narrate the facts, and is permitted to express his opinion, if he disregards the truth and commits perjury, by falsely stating his opinion, for so doing, it will be impossible to charge and convict him, for the law knows no way to make known to the jury the opinion of the witness as false and knowingly so made.

There should be no relaxation or non-observance of the general rule in any case where the law requires its observance for the obvious and potent reason that, unless the primary physical facts are detailed by the witness, the jury may be misled by his bias or prejudice, or his disregard of the truth, which is the foundation of his opinion. City of Hazard v. Eversole, 237 Ky. 242, 35 S. W. (2d) 313; Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611. The mere

opinion of a witness without a statement of the facts is entitled to very little weight, and not sufficient to submit the case to the jury. City of Hazard v. Eversole, supra, and Warfield Natural Gas Co. v. Laferty, supra. Besides, to allow the opinion of a witness to be received as evidence without requiring of him a statement of the facts upon which it is premised would be to permit the witness to invade the province of the jury. If the primary facts are stated by the witness the jury are as competent to form an opinion on them, as is the witness. Railway Company v. Schultz, 43 Ohio St. 270, 1 N. E. 324, 54 Am. Rep. 805. Jones Commentaries on Evidence, Vol. 3, sec. 1249, page 2299.

The appellee in the introduction of her evidence entirely disregarded these elementary rules which should be observed on another trial, if one should be had. The case is one not authorizing or permitting hypothetical questions to the witnesses.

The issue most strenuously and vigorously contested is, Was the insured's property a total or a partial loss? The evidence as to what it would cost to replace the building if it was a total loss was not competent. Palatine Ins. Co. v. Weiss & Co., 109 Ky. 464, 59 S. W. 509, 22 Ky. Law Rep. 994. If the damage to it was a partial loss, evidence of the cost of repairing it was competent on this issue. Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S. W. 234.

Only the opinions of the appellee's witnesses were admitted as evidence bearing on the question of total loss, without a statement of the facts upon which they were based. The evidence in behalf of the appellants was admitted to establish the theory of a partial loss. Yet we are unwilling under these circumstances to say that the court should have given a peremptory instruction to find that the building was only a partial loss.

The appellant offered instruction "X" which is in this language:

"The court instructs the jury that a building is not totally destroyed where a reasonably prudent person desiring a building of the character of the building immediately before the fire would find it reasonably profitable and economical to repair and restore the building rather than tear the buildings down and build an entirely new building."

This instruction fails to furnish the jury a standard by which it might determine whether the building was a partial loss. It makes no pretense of defining "partial loss." Its language was used arguendo in Royal Insurance Co. v. McIntyre, 90 Tex. 170, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797, and approved in National Union Fire Insurance Co. v. Richards (Tex. Civ. App.) 290 S. W. 912; Assurance Co. of America v. Continental Savings & Building Ass'n (Tex. Civ. App.) 8 S. W. (2d) 787; American Central Insurance Co. v. Terry (Tex. Com. App.) 26 S. W. (2d) 162; Glen Falls Ins. Co. v. Rogers (Tex. Civ. App.) 33 S. W. (2d) 465, and in other cases.

In Palatine Ins. Co. v. Weiss, supra, the argument in Royal Insurance Co. v. McIntyre, supra, which is so insistently relied on by appellants, was considered, but not followed, by this court. In the Palatine Case the trial court by its instruction defined "total loss" within the purview of section 762a-22, Ky. Stats., which definition had theretofore been approved by this court in Caledonian Insurance Co. v. Cooke, 101 Ky. 412, 41 S. W. 279, 19 Ky. Law Rep. 651; and in Ætna Ins. Co. v. Glasgow E. L. & P. Co., 107 Ky. 77, 52 S. W. 975, 21 Ky. Law Rep. 726; Thuringia Ins. Co. v. Mallott, 111 Ky. 917, 64 S. W. 991, 23 Ky. Law Rep. 1248; Germania Ins. Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 99 Am. St. Rep. 295, 23 Ky. Law Rep. 1564; and was later approved in Hartford Fire Ins. Co. v. Bourbon County, 115 Ky. 109, 72 S. W. 739, 24 Ky. Law Rep. 1850; Liverpool & London & Globe Ins. Co. v. Rosenberg, 213 Ky. 184, 280 S. W. 924; Security Ins. Co. v. Rosenberg, 227 Ky. 314, 12 S. W. (2d) 688, 690; and Ætna Ins. Co. v. Weekley, 232 Ky. 548, 24 S. W. (2d) 292.

In Security Ins. Co. v. Rosenberg, supra, the words "total loss" were aptly and accurately defined in these words:

"If * * * (the) building was so far injured or damaged by the fire * * * that its identity or specific character as a building was thereby destroyed, or its parts and materials were thereby rendered unsafe or without value as they remained after the fire for the purpose of reconstructing the building substantially as it existed before the fire, the loss was a total one within the meaning of the policy."

The measure of recovery in such case is the value

of the building as fixed in the policy. The definition of the term "partial loss" deducible from the cases supra is, if the building was not so far injured or damaged by the fire that its identity or specific character as a building was not thereby destroyed, or its parts and material were not thereby rendered unsafe or without value for the purpose of repairing as they remain after the fire, so that that part of it which remains after the fire can be substantially restored to its original condition before the fire by repairing it with like or similar material with which it was originally constructed, it was a partial loss. Thuringia Ins. Co. v. Mallott, supra; Hartford Fire Ins. Co. v. Bourbon County Court, supra. The criterion of recovery for partial loss is such reasonable sum as represents the difference in value, if anything, between the building just before the fire occurred and the same building immediately thereafter that was approximately caused by the fire; such difference, if any, in value to be determined by the reasonable cost of restoring or repairing any damage or injury caused solely by the fire to as good condition as it was just before the fire. Citizens' Fire Ins. Co. v. Lockridge, etc., 132 Ky. 1, 116 S. W. 303, 20 L. R. A. (N. S.) 226. Where the issue of total or partial loss, or both, is presented by the pleadings and is supported by the evidence as in the present case, the terms total and partial loss should be defined and the measure of recovery stated in case of total and partial loss by appropriate instructions as we have indicated.

Instruction No. 1 directed the jury to find for the plaintiff if her building was totally destroyed as a result of the fire. No. 2 directed that, "if the jury did not believe from the evidence that the building was totally destroyed by fire as set out in Instruction No. 1, but believed from the evidence that it was partially destroyed as a result of the fire, to find for the plaintiff." Instruction No. 3 is an attempt to define "total loss." It reads:

"The court instructs the jury that there is a total loss of a building where so much of the material of which the building was made has been destroyed by fire or by reason of fire as to leave what remained of said building of no material value as it stands in the reconstruction of said

building, though it may have value as debris or salvage."

No. 4 advised the jury of the number necessary to sign a verdict. Not only was "total loss" incorrectly defined by instruction No. 3, but no instruction was given to the jury advising it what constituted a "partial loss." No instruction was given authorizing the jury in any event to find the building was a partial loss. The court on another trial will define in his instructions both "total loss" and "partial loss" as we have indicated. For the reason heretofore stated, the objection to instruction "X" was properly sustained. The pleadings and the evidence authorized the giving to the jury appellants' theory which was presented by instruction "X". On sustaining the objection to it, it was the duty of the court to prepare or direct to be prepared an instruction correct in form and substance presenting their claim of partial loss as we have indicated. West Kentucky Coal Co. v. Davis, 138 Ky. 667, 128 S. W. 1074; Louisville Cemetery Ass'n v. Downs, 241 Ky. 773, 45 S. W. (2d) 5.

Wherefore the judgment is reversed.