## Grand Lodge, Brotherhood of Railroad Trainmen, v. Bash.

(Decided Dec. 15, 1933.)

W. A. BERRY for appellant.
BEN S. ADAMS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Grand Lodge, Brotherhood of Railroad Trainmen, engages in the business of issuing insurance to employees of railroads for stipulated premiums. Harry R. Bash in August, 1911, was yardmaster, at Paducah, Ky., of the Illinois Central Railroad Company. He made application for a beneficiary certificate through the subordinate lodge at Paducah, which was transmitted by its secretary to the Grand Lodge, Brotherhood of Railroad Trainmen, located at Cleveland, Ohio.

Pursuant to his application, they issued him a beneficiary certificate of insurance of Class C, under date of September 11, 1911, which with a copy of the application attached was dilevered to Bash, through the local lodge, and on which he regularly paid the premiums required for Class C. In August, 1928, he made application, through the local lodge, for a beneficiary certificate of Class G. This application was approved and the beneficiary certificate was issued, designating his wife the beneficiary, and thereby it agreed to pay her at his death from $1,875 to $5,000. To this certificate was attached a photostatic copy of his application. His application therefor was transmitted through the local lodge to the Grand Lodge and the beneficiary certificate was delivered to him by its secretary. To its secretary he regularly paid the premiums due thereunder. W. T. Straub was secretary of the local lodge. In April, 1931, Bash, on a regular form of the lodge, "made applica-

tion to the grand lodge for a benevolent claim,'' which was authorized by the by-laws and constitution of the Grand Lodge.

Between the date of the issuance of the beneficiary certificate of Class C and that of the certificate of Class G, Bash sustained an injury while traveling in an automobile, and on this account was temporarily confined in a hospital under the care of a physician. In his application for beneficiary certificate of Class G, and to the examining physician who examined him to determine his eligibility for the increased insurance, it is claimed by the Grand Lodge he failed to make known the circumstances of his confinement in the hospital and treatment by a physician.

On receiving his application for the benevolent claim, the benevolent board of the Grand Lodge determined and declared that Bash in his application for beneficiary certificate of Class G did not ''give truthful answers in his Form 131, application for increased insurance [Class G] with refernce to his previous health and condition,'' and it so advised the secretary of the local lodge of Paducah, and also mailed to Bash a copy of the letter carrying this information. It canceled the beneficiary certificate of Class G, calculated the difference in the premium between Class C and Class G, for the period since the issuance of Class G, amounting to $127.75, reinstated his certificate of Class C, and then canceled it and sent to the secretary of the local lodge, for delivery to Bash, two drafts, one for $127.75, the difference in premium between the two classes of policies, and the other for $1,875, the face of the policy of Class C, with receipt attached. Straub, the secretary of the local lodge, delivered these drafts to Bash, who accepted them and signed and delivered receipts for them to the secretary of the local lodge, on the 24th of November, 1931. The receipt for the $1,875 was signed by Bash in the presence of his wife, the secretary of the local lodge, and Miss Elizabeth Curtis and Mrs. Alma Page; the last two attested the signature of Bash.

Bash died December 19, 1931, leaving surviving him Elsie Bash as his widow. This action was instituted by her as the beneficiary to recover on certificate G, the $5,000 that was agreed thereby to be paid to the beneficiary after the death of Bash.

In the early part of the year 1931, Bash became

totally and permanently disabled, and on this ground he made application to the Grand Lodge for an allowance of the benevolent claim allowable under his certificate. His widow, Elsie Bash, as the basis of avoidance of the act of the Grand Lodge in its payment to Bash of the $2,002.75, charges that he was in such health and mental condition at the time the Grand Lodge canceled his beneficiary certificate of Class G, reinstated certificate of Class C, and issued and delivered to him the drafts of $127.75 and $1,875, he was incapable of consenting thereto, and that T. S. Jackson, an official of the Grand Lodge, with supervisory powers over its members, and W. T. Straub, secretary of the local lodge, because of the relationship, confidence, and trust between them and Bash, exerted such influence over Bash to such an extent "as to and did subvert his will and independence"; that he was in such "weakened mental and physical condition" he did not comprehend the nature and purpose of the transaction at the time he accepted the action of the benevolent board of the Grand Lodge in the cancellation of one policy, the reinstating of another, and issuing, delivering, and causing him to accept the two drafts.

The Grand Lodge, Brotherhood of Railroad Trainmen, traversed and affirmatively set up the actions of the benevolent board and of Bash as a bar to a recovery. It offered to file an amended answer, setting out certain sections of its by-laws as a defense. The court declined to permit it to be filed, but allowed it to be made a part of the record.

On the issues thus formed, under instructions of the court, the jury returned a verdict in her favor of $2,969.85. It is here insisted that incompetent evidence was admitted; the Grand Lodge was entitled to a peremptory instruction at the close of the evidence in behalf of Elsie Bash, and also at the close of all of the evidence.

Lay witnesses were permitted in behalf of Mrs. Bash, without a statement of the facts, to give their opinions as to the soundness of mind or mental capacity of Bash at the time he accepted and receipted for the two drafts. Drs. Kidd and Powell testified in her behalf. Dr. Powell was not asked concerning the mental condition of Bash. Dr. Kidd treated him during his

last illness. His death was caused by aerticannerism. Dr. Kidd testified that he was in a weakened physical condition in July, 1931; weaker in September, and still weaker in November, 1931. He was requested to give his opinion whether Bash was "mentally capable of attending to business, such as having a policy surrendered or exchanged for another." His response was: "That is rather a hard question to answer." He was further asked and answered thus:

"Q. Was he a normal man mentally and physically at any time after the first of July until his death? A. No.

"Q. What would you say about his mental condition and capacity for attending to business on the 19th day of September 1931 or November 24th, 1931? A. Not good."

The opinions of the lay witnesses, without their statements of the facts, are not sufficient to authorize a submission of the case to the jury. In Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. (2d) 731, 735, we said:

"It is the accepted rule in this jurisdiction that the opinions of witnesses constitute competent evidence * * * but such opinions will not be sufficient evidence to take a case to the jury, unless the facts upon which the opinions are based are such as tend to establish a lack of testamentary capacity. Wigginton v. Wigginton, 194 Ky. 385, 239 S. W. 455; Bodine v. Bodine, 241 Ky. 706, 44 S. W. (2d) 840; Schrodt v. Schrodt, 181 Ky. 174, 203 S. W. 1051; Burdon v. Burdon, 225 Ky. 480, 9 S. W. (2d) 220."

Springfield Fire & Marine Insurance Co. v. Ramey, 245 Ky. 367, 53 S. W. (2d) 560; Smith v. Smith, 243 Ky. 240, 47 S. W. (2d) 1036.

Dr. Kidd was merely asked was he a normal man mentally and physically after the first of July, and his answer was, "No." His answer stating that his mental condition was not good cannot be regarded as meeting the requirements of the elementary rules in a case where mental unsoundness of an individual is the issue. It is very plain that the evidence offered by Mrs. Bash as tending to show that Bash was mentally unsound, at the time he received the drafts and signed receipts

therefor, was entirely insufficient to authorize the submission of this issue to the jury. The receipt for the $1,875, now before us, shows that it was signed by Bash in the presence of two witnesses. The evidence also discloses that at the time he did so, Mrs. Bash and Straub, secretary of the local lodge, were present and observed the transaction. Thus it is shown that four persons were present on the occasion of his receiving and receipting for this draft. Mr. Straub was heard by the jury. He stated that Bash was mentally all right. Mrs. Bash offered neither herself nor the attesting witnesses to establish the contrary. The fact that she and the attesting witnesses failed to testify in her behalf as to the mental condition of Bash at the time the draft was delivered and accepted and the receipt signed by him for the $1,875, affords a strong presumption that the reason she did not testify nor call the attesting witnesses is that she, nor they, would not sustain her insistence that her husband at that time did not understand the nature of the transaction sufficiently to accept the draft in satisfaction of the policy which she here claims is collectible. Star Mills v. Bailey, 140 Ky. 194, 130 S. W. 1077, 140 Am. St. Rep. 370; Rice v. Rice, 243 Ky. 837, 50 S. W. (2d) 26.

To sustain her allegation that Johnson and Straub, because of their relationship with, and influence over, Bash, unduly influenced him to consent to the cancellation of one beneficiary certificate, reinstate the other, and receive draft in satisfaction of it, no evidence whatsoever was offered.

The amended answer offered by the Grand Lodge presented certain sections of its by-laws authorizing its benevolent board to take the steps that were taken to cancel the beneficiary certificate sued on and to settle the one restored. Without this amendment the evidence as to the actions of the benevolent board was competent under the general issue. Aside from this, the plaintiff in setting out her cause of action inferentially admitted the settlement of Bash and the Grand Lodge, and attacked it on the grounds of undue influence and a lack of mental capacity. Therefore it was not required of the Grand Lodge to present its by-laws authorizing the benevolent board to act in the premise. The court did not err in refusing to permit the amended answer to be filed. The parties to the contract had a

right to cancel one beneficiary certificate, reinstate the other, and to agree on the terms of the settlement of the latter and to pay and accept the sum paid in full settlement of the latter. National U. F. Insurance Co. v. Nevils, 217 Mo. App. 230, 274 S. W. 503. While it is shown that the Grand Lodge canceled the one certificate, reinstated the other, and transmitted drafts in satisfaction of the latter, without notice to and without the consent of Bash, the acceptance thereof by him was a ratification or the giving of his consent for the beneficiary certificate sued on to be canceled. Couch, volume 6, section 1407, page 5023, and cases cited. Conservative Life Insurance Co. v. Hutchinson, 244 Ky. 746, 52 S. W. (2d) 709.

The judgment is reversed, with direction to grant a new trial and for proceedings consistent with this opinion.