## Insurance Co. of North America et al. v. Creech Drug Store.

(Decided May 8, 1934.)

F. M. DRAKE, GORDON, LAURENT & OGDEN, JAS. SAMPSON and WM. SAMPSON for appellants.

FORESTER & CARTER for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This appeal presents for review the trial of an action brought by the Creech Drug Store, a corporation, to recover on certain insurance policies, insuring it in the amount stated in the several policies, against loss by fire. The policies were issued and delivered by the Insurance Company of North America, Home Insurance Company, Ætna Insurance Company, and Liverpool, London & Globe Insurance Company. Separate actions were filed by the Creech Drug Store against them, which were consolidated and tried as one. The insurance companies entered a motion to transfer the actions to the equity docket because of complicated facts which would be overlooked in the determination and apportionment of the loss. We shall hereafter consider the action of the court in ordering the transfer.

On a traverse of the petitions, an issue was formed, the evidence taken, and a judgment entered by the court, without the intervention of a jury, for a definite amount against each company, aggregating $6,010. The insurance companies are here insisting the evidence in behalf of the Creech Drug Store "is entirely by witnesses who have never been in the drug business and have no ex-

pert knowledge of either a drug store or fixtures,'' the testimony of the manager of the Creech Drug Store is ''entirely of generalities with consistent inability or refusal to be specific regarding any element entering into the amount of damage''; ''the assured resumed business after the fire without purchasing any new stock, simply going on with the stock which it claimed had been damaged 75%''; ''no competent evidence to support the alleged damage [about 30%] to the fixtures, which were being used after the fire [without purchasing any new ones].'' The insurance companies demanded an appraisal of the loss in accordance with the policy provisions, but this was refused by the assured; ''the case was arbitrarily decided without proper consideration or any hearing,'' the court refusing to permit the insurance companies to be heard.

The drug store, at the time of the fire was located on the first floor of a two story building. The fire originated in the second story. W. W. Eager, a resident of Harlan and a druggist by occupation, as secretary, treasurer, and manager, had had charge of the drug store. The overhead ceiling of the building in which it was located was metal. The fire burned from above, a small space in the center of the building, causing the giving away of this space in the metal ceiling, through which fire dropped into the drug store. Excepting the fire thus entering the room where the drug store was located and the resulting heat and the use of water to extinguish the fire in the second story, the interior of the drug store was not otherwise actually damaged by the fire. However, some of the witnesses stated the heat was intense and the water poured into the drug store until it was from three to six inches deep on the floor. The fire occurred the 5th day of April, 1932, at 8 or 9 o'clock p. m. Eager and other witnesses claim everything in the drug store was ''soaking wet,'' and the water, smoke, and fire ''ruined the sale value of the contents of the store.'' ''A lot of school books were in stock; they were ruined,'' ''were all to pieces.'' ''The heat ruined a lot of stuff,'' destroyed the paint, varnish, glass and ''warped'' the fixtures, drawers and woodwork; the woodwork ''got hot and wet.'' Eager claims, before the fire, the stock and fixtures were in good condition.

After the fire, he caused the stock and fixtures to be invoiced at cost price. A record of the invoice was

made as it progressed. The inventory was made by Dr. L. S. Estes, a pharmacist, residing in Harlan county, who was in the drug store at the time the fire was discovered. He was assisted by W. D. Forrester, Kyle Whitehead, and T. F. Ward. Ward claims he had worked in a drug store and commissaries; had spent a great deal of time in the mercantile business. He had worked some in the Creech Drug Store. Whitehead was a teacher and newspaper man. He had been employed in a drug store at the age of 16. He did the writing and copying of the inventory as called by Estes. He testified: "Eager checked some articles on prices and also the condition of the stock." Forrester, one of the helpers in making the inventory, was not introduced as a witness. After the inventory was completed, S. B. Douglas, Dr. Kittenger, and M. R. Howard, within two weeks after the fire, were called by Eager "to look over the stock and help determine" the damage. They had the inventory present, and, in the language of Douglas, "they had not checked thoroughly, but checked some of the items on the inventory and found they were made correct"; they "were satisfied the inventory seemed to be alright"; they made what they denominated "an appraisal" as to what the damage to the drug store was by reason of the fire and water. In their opinion: "In dollars and cents, the total damage to the fixtures and stock was $8,430.51." The language of this witness is: "The stock looked to be in very bad condition and the fixtures were damaged quite a bit"; they "opened some [packages] and found some of the powder goods had caked and was hard, either by water or heat." As to the liquids, they did not know "whether the heat would affect them or not"; "the books had gotten wet and were soiled"; "noticed some [labels] on the bottles were soiled by water." The three "placed the value of the stock after the fire as being around 25% of the inventory and the fixtures around $1,500.00." M. R. Howard, a hardware and dry goods merchant, was one of the appraisers. He stated the total appraisement of the fixtures and drugs was $8,430.51, and, to use his language, he and Douglas and Kittenger "just made a general estimation of the stock and merchandise and decided it had been damaged 75%." They did not check the inventory; merely "looked around over the drug store, then estimated the damage"; "accepted the inventory as being correct." W. W. Lewis was presi-

dent of the corporation which owned the Creech Drug Store. He owned three shares of stock. In response to the question, "What was damaged of the stock after the fire?" his answer was, "On a large portion of the articles the damage was complete, and on some it was not so much. It all appeared to have been greatly damaged and the part that was not damaged, the sale value was damaged, for nobody wants to buy stuff that shows it has been in a fire; I should say, on the whole, if I wanted to buy stock like this, I wouldn't give 20 cents on the dollar." He claimed he was "familiar with the stock and fixtures before the fire and they were in good condition."

Our summary of the testimony of the witnesses of the Creech Drug Store makes it plain that their estimation and fixing of the amount of damages were not based on the facts, but a casual, general observation. Few of them had ever had any knowledge or experience in the drug business and no acquaintance with drugs or drug fixtures or supplies. Their statements are indefinite and uncertain, and also mere conclusions, entitled to but little, if any, weight. Those of the witnesses who were entirely without experience and knowledge of drugs and drug business fail to qualify sufficiently to express an opinion as to the sound or damaged value of the drugs. Nor do they state the facts upon which their general conclusions were based. It is patent that a dry goods, grocery merchant, keeper of commissaries, teacher, or newspaper man might have experience and knowledge sufficient to express an opinion as to the value of showcases and drug fixtures, but in this case such witnesses disclosed no experience or knowledge of either drugs, showcases, or drug store fixtures, or supplies, sufficient to enable them to qualify as expert witnesses as to either subject.

The testimony of Eager is evasive, uncertain, and too indefinite to enable one to ascertain and determine either the sound or damaged value of the drugs or the fixtures or supplies. See Springfield Fire & Marine Ins. Co. v. Ramey, 245 Ky. 367, 53 S. W. (2d) 560; New York Underwriters' Ins. Co. v. Mullins, 244 Ky. 788, 52 S. W. (2d) 697. Dr. L. S. Estes participated in making the inventory, and Kyle Whitehead, in explaining his connection with the making of the inventory, said: "I did the writing and the copying of the inventory as

called by Mr. Estes and I helped Mr. Eager check some articles on prices and also the condition of the stock," yet for some inexplicable reason Estes, the pharmacist, was not asked any questions by the Creech Drug Store as to the damaged value of the stock, nor was the copy of the inventory called by Estes, and which Whitehead helped Eager check both as to prices and "the condition of the stock," produced. The fact that Estes was a registered pharmacist entitled him to qualify as an expert as to the damaged value of the stock; the copy of the inventory that Whitehead testified he made, as called by Estes, and "helped Eager to check some articles on prices and also the condition of the stock," plainly indicates that at the time of the making of the inventory both the cost·price and damaged value of the articles were made by him, and that Eager, the secretary,· treasurer, and manager of the corporation, "helped check some of the articles on prices and also the condition of the stock." There is no explanation in the record accounting for the absence of this copy of the inventory showing the check of articles on the prices and condition of the stock. Also no explanation is furnished as to why Estes, the experienced and trained pharmacist, was not inquired of when he was on the witness stand as to the damaged value of the drugs and fixtures. The burden of proof was on the Creech Drug Store to show the difference between the sound value and the damaged value of the drugs and fixtures, and failing to inquire of Estes, who participated in making the invoice, and failing to produce the copy of the inventory to which Whitehead referred in his testimony, are circumstances from which it is allowed to be inferred that the reason for failure of the Creech Drug Store to inquire of Estes as to the damaged value of the drugs, fixtures, and supplies and to produce the copy of the inventory about which Whitehead testified is the same would not sustain the damages claimed by the Creech Drug Store. Star Mills v. Bailey, 140 Ky. 194, 130 S. W. 1077, 140 Am. St. Rep. 370.

The failure to examine Estes as to the sound or damaged value ascertained and determinable by him at the time he participated in making the inventory, as well as the failure to produce the copy of the inventory described by the testimony of Whitehead, warrants the inference that Estes' testimony in this respect and the copy of the inventory, identified by the testimony of

Whitehead, would not sustain the Creech Drug Store in its claim of damages, and for this reason such evidence was not developed by it. Rice v. Rice, 243 Ky. 837, 50 S. W. (2d) 26.

It is urged by the Creech Drug Store that "any ordinary man of common sense should be able to fix a reasonable damage to an article in a drug store if he knew what that article cost."

True it is that common sense is an important element in the qualification of a witness to ascertain and fix either the sound or damaged value of an article, but the law demands other essential qualifications of an expert. It requires in such cases, in addition to the quality of common sense, special knowledge of the subject-matter about which he testifies, gained either by study or practical experience, so that he can give the jury or court trying the case assistance and guidance in. solving a problem to which their equipment of good judgment and average knowledge is inadequate. 11 R. C. L. 574.

The insurance companies introduced druggists of years of practical experience, based on special knowledge of the subject-matters about which they testified. Their qualifications as the facts disclosed by their testimony entitled them to state their opinions as to the sound and damaged values of the stock of drugs, fixtures, and supplies on hand at the time they examined those of the Creech Drug Store. About five months had elapsed since the date of the fire and before their examination and inspection of the stock, fixtures, and supplies of the Creech Drug Store. From their testimony they devoted amply sufficient time to an examination and inspection of the stock of drugs, fixtures, and supplies on hand. Their testimony disclosed a candidness and impartiality, authorizing the giving of weight to it. They fixed the reasonable amount of damage to the stock resulting from the fire, assuming to be correct the inventory thereof, as it was made by Estes, Whitehead, and Forrester, at $1,654.54 and the damage to the fixtures at $540. To impugn their motives and to counteract the weight of their opinions the Creech Drug Store introduced evidence relating to the time, manner, and process used by them in their making the examination and inspection of the stock and fixtures. The witnesses who testified for this purpose, themselves,.

were without any experience or knowledge of the type and character of work engaged in by these druggists for the purpose of learning and fixing the amount of damages resulting from the fire. The weight and value of the testimony of these druggists were for the court without the aid or the detriment added thereto by the opinions of the witnesses in rebuttal relative thereto.

An earnest, careful, diligent, and unbiased consideration of the whole of the evidence convinces us the damages fixed by the trial judge were unauthorized by the competent, relevant evidence, and grossly excessive. No evidence showing Creech Drug Store refused to participate in making an appraisal or arbitration was offered.

An objectoin was made and an exception saved to the order transferring the actions to the equity docket. The right of either the plaintiff or defendant to have an action properly brought at law transferred to the equity docket is determinable on the pleadings, and neither the petitions nor the answers herein presented an equitable issue; therefore the court erred in ordering the transfer.

The Creech Drug Store, under a provision of the insurance policies, was entitled to recover a sum reasonably sufficient to cover its damages sustained to its stock of drugs, fixtures, and supplies on hand. It was the duty of the insurance companies, under the obligations of their policies, to pay such damages and no more. The burden was on the Creech Drug Store to show by competent, relevant evidence the amount of these damages. Ætna Ins. Co. v. Davis, 55 S. W. 705, 21 Ky. Law Rep. 1456. It has failed to meet the requirements of this rule. The insurance companies, by adequate evidence, have shown the reasonable and fair amount due under their policies. However, since the actions were properly brought at law and improperly transferred to the equity docket, we are deprived of the power of directing a judgment to be entered for the amount of damages satisfactorily established, in our judgment, to which the Creech Drug Store was entitled.

Wherefore the judgment is reversed for proceedings consistent with this opinion.