# Huber & Huber Motor Express v. Martin's Adm'r.
## Same v. White.

(Decided May 8, 1936.)

M. A. GRAY, JOE S. FEATHER, ROY HOUSE and GRAY & FEATHER for appellant.

R. L. POPE and C. B. UPTON for appellee Martin's Adm'r.

C. B. UPTON for appellee White.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

These actions were tried together in the circuit court and are presented to us as one, and we will dispose of them in one opinion.

The action of John Martin was to recover damages for a personal injury sustained in the collision of trucks. That of Louis White, to recover damages to one of the trucks. The jury's verdict was in favor of Martin for $1,500, and, White, $250.

Huber & Huber Motor Express has prosecuted an appeal from Martin's and has entered a motion for an appeal as to White's. As a ground for reversal, they contend that the court erred in overruling a motion for a peremptory instruction. In support of this ground, they argue that the evidence was insufficient to authorize a submission of the issues to the jury; the evidence so conclusively establishes that the driver of White's truck was guilty of contributory negligence, his negligence became a question of law. It also complains of Martin's and White's counsel's closing argument to the jury. As to the negligence of the driver of the Huber & Huber Motor Express truck and that of the driver of the White truck, the evidence establishing it is sufficient to submit the theory of either party to the jury. If that of Martin and White is accepted, the driver of the Huber & Huber truck was a violator of the law of the road. On the other hand, if that of Huber & Huber is accepted, the driver of the White truck was the violator of the law of the road, with the evidence in behalf of White and Martin strongly preponderating. It is not necessary, nor incumbent upon us to reproduce the evidence.

The sharp, decisive, determinative question is the identity of the ownership of Huber & Huber Motor Express of the truck which collided with White's resulting in the injury of Martin and the damage to White's. The evidence in behalf of Martin and White on this issue is confined to the testimony of Louis White, John Martin,

and Doc Williams; and that in favor of Huber & Huber Motor Express, to that of J. T. Scanlon, their foreman and truck dispatcher at Knoxville, Tenn.

The collision occurred about 4 o'clock p. m. on the 8th day of November, 1934, on United States highway No. 25, between Mountain Ash and Emlyn, Ky., on a curve about 100 yards south of the Ellis Davis railroad crossing. At that time the 4 o'clock train was near it, going south. The truck claimed by Martin and White to be owned by Huber & Huber, proceeded over the crossing ahead of the train, then for a distance of 100 yards to the point of the collision. John Martin testified positively that it was a big yellow truck with one man in the cab operating it. On its windshield, and also over the windshield, were the words "Huber & Huber Motor Express." He observed this name as the truck came over the crossing. Louis White, also, testified that the name "Huber & Huber Motor Express" was "over the cab on the yellow truck"; that he saw the name when it was across a valley, a distance of about 600 feet from the White truck, and this was the last time he saw the name.

Doc Williams testified that he was acquainted with the trucks and most of the drivers of Huber & Huber Motor Express, but did not know the name of but one of them, and that about 3 o'clock on the afternoon of the collision, "at the Bell crossing," beyond Mountain Ash, he saw, on the highway, one of Huber & Huber Motor Express trucks; it was yellow, with the name "Huber & Huber Motor Express" printed on it in black letters; that he was familiar with the color, size, and name printed on the trucks. The one he saw on this occasion "was just like Huber & Huber Motor Express trucks." Without objection, he narrated a conversation he had at that time and place with the driver of the truck in this language:

"Well, I stopped there and walked around, first went around the back side of his truck. I said: 'What are you doing here?' and he said: 'I'm sick, I'm sick at my stomach,' and I seen a little scratch along the side of the truck about as wide as that [indicating] on the back end of it. I said: 'You side-swiped something,' and he said: 'I don't know. I think I knocked Hell out of a truck down there.' "

He declared that he had previously seen the driver of the truck, and the truck, and knew him and had talked with him on other occasions "at Bell crossing."

Scanlon testified "that one of his duties was receiving and dispatching trucks; that no truck came into the company's Knoxville headquarters needing any repairs on November 9th, 1934, or on any other date near that time; and that all of the company's southbound trucks for that day checked into Knoxville before 8:00 A. M. on the morning of the accident; and that the cabs of the Huber & Huber Motor Company trucks do not extend up over the windshield, as testified by Martin and White and Williams, but that the lettering on the Huber & Huber trucks are on the bodies back of the cabs. Mr. Scanlon introduced as a part of his evidence the company's records, kept at Knoxville, showing that no Huber & Huber truck was southbound on November 9th, 1934, at the time of the alleged accident."

Thus, it is apparent that as to the identity of the truck as one of Huber & Huber Motor Express the evidence was conflicting. It was shown by the testimony of Scanlon that the highway on which the accident happened was daily used by the Huber & Huber Motor Express trucks, operated by their driver, in the prosecution of their business. To this extent, Scanlon's testimony corroborates Martin's, White's and Williams'.

It cannot be doubted that there was some evidence of probative value authorizing the submission of this issue to the jury.

Subject to the exercise of legal discretion, it was exclusively the province of the jury to determine from the whole of the evidence the identity of the truck and its driver, and whether they were engaged in the regular business of Huber & Huber Motor Express at the time of the accident. It was the sole judge of the weight, effect, and sufficiency of the testimony of the witnesses to establish any fact for which it was offered. It was the judge of their credibility, and its privilege to believe all of the testimony of either or any one of them, in whole or in part, or reject part, as it might have been convinced of the truth or falsity of his testimony, whether from interest, willfulness, or mistake. It was its duty to reconcile any apparent conflict in the testimony, if possible to do so.

It is the prevailing rule that where it lies within the power of a litigant to produce a witness or any evidence on an issue and he fails to do so, creates the presumption that the testimony of the witness or other evidence, if produced, would have been unfavorable to such litigant. The Huber & Huber Motor Express failed to, and did not, introduce their drivers or any of them, who were regularly employed to operate their trucks on the day of the accident on and over this highway. At least their depositions could have been taken and read as evidence. The jury was entitled to weigh as evidence against them the presumption thus created as to this issue, as well as on the issue of the negligence of the operator of their truck at the time of the accident. Brown v. Spradlin, 146 Ky. 173, 142 S. W. 224; Bowler v. Blair, 6 Ky. Law Rep. 659; Taylor, for Use, etc., of Laurel County v. Jones, 253 Ky. 285, 69 S. W. (2d) 372; Insurance Co. of North America v. Creech Drug Store, 256 Ky. 56, 75 S. W. (2d) 552; Grand Lodge, Brotherhood of Railroad Trainmen v. Bash, 251 Ky. 826, 66 S. W. (2d) 25; Guthrie v. Foster, 256 Ky. 753, 76 S. W. (2d) 927; Rice v. Rice, 243 Ky. 837, 50 S. W. (2d) 26; Stricker v. Billingsley, 169 Okl. 145, 36 P. (2d) 474.

On the issue as to whether the truck was one of Huber & Huber Motor Express, operated by their driver and engaged at that time in their business, it would have been improper for the trial court, under the evidence, to have directed a verdict for Huber & Huber Motor Express.

To sustain its insistence for a peremptory instruction as to this issue, it cites to us and relies on Doss v. Monticello Electric Light & Power Co., 193 Ky. 499, 236 S. W. 1046; Gainesboro Tel. Co. v. Thomas, 234 Ky. 373, 28 S. W. (2d) 34; Mullen & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576; Packard-Louisville Motor Co. v. O'Neal, 248 Ky. 438, 58 S. W. (2d) 630; Kennedy Transfer Co. v. Greenfield's Adm'x, 248 Ky. 708, 59 S. W. (2d) 978; American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115; Spencer's Adm'r v. Fisel, 254 Ky. 503, 507, 71 S. W. (2d) 955.

The facts in those cases are not comparable to those in the present one, except slightly in the Fisel Case. Only to the extent that the evidence showed the name "Fisel" was printed on the truck in "great big letters,"

do the facts in it resemble those in the present one. The facts in the present one are more nearly like unto those in Sympson Bros. Coal Co. v. Coomes, 248 Ky. 324, 58 S. W. (2d) 594. In the Fisel Case, the witnesses claimed that at 11 or 11:30 o'clock in the night a truck and an automobile in which the witnesses were traveling were proceeding at a rapid rate of speed, from opposite directions, and, while so doing, they observed Fisel's name on the truck. This evidence merely created a presumption against Fisel which was conclusively overcome by the uncontradicted evidence that the truck so unsatisfactorily identified as his was not one of Fisel's.

The evidence showing that the trucks and drivers of Huber & Huber Motor Express made daily trips at irregular hours over this highway in their business is undisputed. And the evidence identifying the truck and the driver as one of Huber & Huber Motor Express, at the time of the accident, is also uncontradicted, except inferentially by the record of the arrivals and departures of their trucks at Knoxville, Tenn.

One of the statements of Martin's and White's counsel to which they objected reads: "Why didn't the defendant come in here and why didn't they have their driver here to testify for them, if they had any defense to make? One of the Hubers did come in this morning after the case was over, I believe." Another: "When I was called out there, we did not think he [speaking of Martin] would ever be able to get to the court house to tell how he was injured." Still another is: "The evidence is that he beat the train across that crossing, and thats the reason of so many accidents, because fools, drunken fools, at railroad crossings try to beat trains across the crossing, and I think he was drunk, or he would not have been puking up there, as Doc Williams said he was." The fourth one is: "Come around, John, and roll up your pant leg, and show the jury your leg." Martin, thereupon, as the record discloses, appeared before the jury, rolled up his pant leg and exposed to the view of the jury his injured leg.

A glance at the first and third above statements evinces that they were based on some evidence. The second was immaterial to such a degree, manifestly, it did not influence the jury.

The action of counsel during his argument, causing

his client to expose his leg to the jury, it may be conceded, was improper.

The prejudicial effect of this action of counsel and his client cannot be tested, measured, and determined by a mechanical application of a uniform formula; nor solely by precedent. In some cases we have ruled that the court on its own motion should have taken action because of counsel's statements to the jury. In others, we have adopted a different practice. The general rule contemplates that in every case in which the objecting party conceives an argument of counsel to be improper, after his objection is overruled, he should bring to the attention of the court the insufficiency or the impropriety of its ruling and suggest or request a further or additional action on the part of the court. Huber & Huber Motor Express merely objected to adverse counsel's statements relating to exhibiting his client's leg to the jury. The court knew whether his client had already exhibited it to the jury and whether his counsel calling for him and having him re-expose it was only a repetition of evidence already introduced. Doubtless, Huber Motor Express at the time so regarded the acts of counsel and his client, and for this reason refrained asking the court to admonish the jury.

They argue that the objectionable action of counsel and his client is similar to that which was condemned by us in Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697. In that case there was an aggregation of errors, one of which was placing Williams in front of the jury, re-exhibiting his naked limb to it, and having him sit with it exposed throughout an argument over an hour's duration, to which counsel repeatedly referred and freely commented. In the present case, no such conduct was engaged in.

The motion and ground for new trial show they did not therein rely on the failure of the court of its own accord to admonish the jury respecting adverse counsel and his client as a ground for a new trial. Thus, it appears that their insistence for an admonition to the jury is here presented in their brief for the first time. It is therefore sufficient to say that so presenting it is too late to avail them in this court as a ground of reversal.

Complaint is made in their brief that during the

examination of witnesses, Martin's and White's counsel asked them concerning Mr. Highbaugh, who seems to have procured statements of witnesses for Huber & Huber Motor Express, containing their information as to the collision. The basis of this is, that the jury, because of the questions relating to Highbaugh, probably induced it to infer that he was representing some insurance company. Such is too speculative and doubtful to call for a consideration.

A careful examination of the record convinces us that a fair and impartial trial was awarded Huber & Huber Motor Express, and that no prejudicial error is shown by the record or pointed out in brief entitling them to a reversal in either case.

Wherefore, the judgments are affirmed.