## Gilbert, By, Etc. v. Osenton, et al.

### (Decided January 22, 1924.)

### Appeal from Carter Circuit Court.

1. Evidence—Opinions of Non-expert Witness on Question of Mental Incapacity of Little Value.—The opinions of non-expert witnesses on the question of mental incapacity, though admissible in evidence, are of little probative value, unless based on facts tending to show unsoundness of mind.

2. Deeds—Finding of Mental Capacity Sustained by Evidence.—In an action to set aside a deed on ground of mental incapacity, a finding of capacity held sustained by the evidence.

3. Appeal and Error—Doubt Resolved in Favor of Finding of Chancellor.—On appeal, a doubt will be resolved in favor of finding of chancellor.

WAUGH & HOWERTON for appellant.

THEOBALD & THEOBALD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In the summer or fall of 1909, Oliver Gilbert suffered from a stroke of some kind that impaired his health. At that time he was the owner of a farm in Carter county consisting of about 600 acres, from which the timber had been cleared and sold. Soon after he was taken ill, his

wife sent for their son, Dr. Hardin Gilbert, who was then practicing his profession in the state of Kansas. On his return to Carter county, Dr. Gilbert consulted with the members of his family and recommended that the farm be sold in order to relieve his father of the cares of business. With this end in view he offered the farm for sale at the price of $5,000.00. After one man had examined it and declined to buy, it was offered to L. E. Osenton, who, concluding that the sum asked was a fair price for the property, agreed to pay therefor $2,500.00 in cash, and to execute notes for the balance. On January 3, 1910, Oliver Gilbert and his wife executed, acknowledged and delivered to Osenton a deed to the property. About the same time, Osenton sold a half interest in the property to George W. Armstrong, and a few months later conveyed to him the remaining half interest, receiving the same consideration he had paid to Oliver Gilbert. Some years later, Armstrong divided the farm into small tracts and sold them to several different parties. After the lapse of several years, Frank and Porter Gilbert, sons of Oliver Gilbert, stated to several persons that Armstrong's title was not good, as their father was not competent to make a deed. Armstrong sued them for slandering his title, and thereupon Frank Gilbert, claiming to act as the next friend of his father, Oliver Gilbert, brought this suit against Osenton, and the various purchasers to set aside the deed of January 3, 1910, upon the ground of mental incapacity on the part of Oliver Gilbert, coupled with inadequacy of consideration. On final hearing the chancellor rendered judgment dismissing the petition, and from that judgment this appeal is prosecuted.

Several witnesses for appellant deposed that they knew and saw Oliver Gilbert just prior to, and immediately after, the execution of the deed, and that, in their opinion, he did not have sufficient mental capacity to enable him to understand and appreciate the legal effect of the conveyance. The majority of them based their opinion on the fact that prior to his illness he had been a man who talked a great deal, and took a lively interest in his business affairs, but after that time he was quiet and reticent, and appeared to be nervous and depressed. One of them based his opinion on the fact that he saw Oliver Gilbert come to the foot of the hill where he was plowing, and sow grass seed along the hill by throwing the seed by the handful as far as he could back and forth along the strip. Other witnesses based their opinion on

the fact that Oliver Gilbert stated that the farm was worn out and that he could not make a living on it. It was further shown that he was taken to a sanitarium just before the execution of the deed and to another sanitarium just after its execution, but neither of the physicians in charge testified as to his mental condition. Two or three witnesses claimed that they were told by Dr. Hardin Gilbert that his father was suffering from softening of the brain and was unable to attend to any business. On the other hand, Drs. Hardin Gilbert and G. B. O'Roark, who examined Oliver Gilbert at the time the deed was executed, and attached to the deed an affidavit to the same effect, say that in their opinion he was competent to execute the deed. Several other witnesses, who knew and saw him about the time of the transaction, also deposed that in their opinion his mind was all right.

For appellants several witnesses testified that the land in controversy was worth on January 10, 1910, anywhere from $7,000.00 to $15,000.00, while several witnesses for appellee testified that $5,000.00 was a reasonable price for the property.

Appellant asks a reversal on the ground that the weight of the evidence is to the effect that at the time the deed was executed Oliver Gilbert was incapable of understanding the nature and effect of the transaction, and that the purchase price was grossly inadequate. At the outset it is important to note that there was no plea of fraud or undue influence, and that the transaction was singularly free from any circumstance tending to show that any fraud or undue influence was practiced on the grantor. An attempt is made to cast suspicion on Dr. Gilbert, but we are satisfied that the only motive that prompted him to recommend the sale was the condition of his father's health. Not only so, but as he fixed the purchase price, there is absolutely nothing in the case to justify the inference that either Osenton or Armstrong took, or sought to take, any advantage of the grantor. The case is simply one where the land was offered to Osenton at a certain price, and he agreed to buy at that price.

Another thing not to be overlooked is that it is always extremely difficult for witnesses to recall the past except in the light of changed conditions. Since the transaction Oliver Gilbert has grown older and become more feeble in mind and body, and there has been a large increase in the market value of the land, and it is apparent that these changes have influenced the minds of the witnesses as they

attempted to recall and tell what took place ten years ago. Furthermore, it is the rule in this state that the opinions of nonexpert witnesses on the question of mental incapacity, though admissible in evidence, are of little probative value unless based on facts tending to show unsoundness of mind. Here all the witnesses for appellant were nonexperts, and the facts on which their opinions are based may all be true, and yet the grantor may have been fully capable of executing the deed. On the other hand, physicians and several other witnesses testified to the grantor's soundness of mind. In addition to all this, the case does not have a good flavor. If it be true that Oliver Gilbert was incompetent, and that the purchase price was inadequate, it is difficult to understand why Frank Gilbert, who now claims to have known thereof when the deed was executed, did not bring suit then to set the transaction aside, and the fact that he delayed more than ten years before bringing suit, and then acknowledged in his deposition that he would not have brought the suit had not Armstrong first sued him for slandering the title, is a strong circumstance tending to show that the action was the result of personal resentment rather than the conviction that his father had been the victim of imposition. Viewing appellant's evidence in the light of these considerations, the most that can be said is that it raises a doubt which will be resolved in favor of the finding of the chancellor.

Judgment affirmed.