## Godman et al. v. Aulick et al.

(Decided Nov. 12, 1935.)

A. H. BARKER for appellants.

ROGERS & ROGERS, O. M. ROGERS and JAMES ROGERS for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The will of J. H. Godman, which was probated on February 22, 1933, by an order of the county court of Pendleton county, was contested on an appeal to the Pendleton circuit court, by Maude Aulick, Claude Godman, James Godman, Jr., Lois Braun, and Donald Aulick, on the ground that the testator "did not have mind and memory sufficient to make and execute a valid will and was unduly influenced to execute it, but for the exercise of undue influence, he would not have executed it."

On the trial to a jury in the circuit court, the testimony in favor of the contestants and contestees was directed solely to the ground of mental incapacity of the testator. The testimony of the witnesses establishing the signing and publishing of the will in the manner and form required by the statutes is uncontradicted. The jury's verdict was that the paper introduced and identified by the attesting witnesses was not the will of J. H. Godman.

The contestees are here insisting that a verdict should have been directed for them, and if they are mistaken in this, the evidence is insufficient to sustain it. A large number of witnesses testified for the contestants, and a like number for the contestees. A number of the adult daughters and sons of J. H. Godman were witnesses of the contestants.

The substance of the testimony of the witnesses for the contestants is that J. H. Godman had been addicted to excessive use of intoxicants for 35 or more years. It was his habit to indulge in "drinking sprees" for a week or two, or a month or two. When not under the influence of liquor, the evidence of both the contestants and the contestees shows that he was intelligent, energetic, industrious, and employed his time farming, and thus had accumulated an estate, though not large. He engaged in business until his death, but for a number of years next before it he did not as actively and vigor-

ously employ his time and energy. He was 72 years old at the date of his death. He had no ailment of mind or body before his last illness, except that condition which was incident to his age and periodical drinking. He executed his will on the 14th day of March, 1929, about four years before his death, in the presence of J. J. Barton and Charles W. Thompson. Barton was a neighbor of J. H. Godman, and Charles W. Thompson was the cashier of the Pendleton Bank of Pendleton County. It was written with a pencil by Barton, at the home of Barton, in the presence, and at the request, of J. H. Godman. Its terms and provisions were dictated by Godman to Barton, and after it was written by him with pencil, it was read to, and approved by, Godman. Then it was copied on a typewriter by Barton, and carried by Barton and J. H. Godman to the Pendleton Bank, where it was signed by Godman in the presence of Barton and Thompson, and in turn signed by them as attesting witnesses in the presence of Godman. Barton is unequivocal in his statement that at the time the will was dictated by Godman, prepared and carried to the bank, and witnessed by him and Thompson, Godman was absolutely free from the influence of intoxicants. Thompson, who had been well acquainted with Godman for years, deposed that at the time the will was signed by Godman, and attested by him and Barton, he observed nothing indicating Godman was under the influence of intoxicants or not in the full possession of his normal mental faculties. The evidence shows that on the day the will was signed and published, Godman gave checks to others in payment of accounts he owed them. The witnesses of the contestants merely testified in a general way as to the frequency and habit of Godman drinking intoxicants to a state of drunkenness. All of them admitted that Godman, except when under the influence of intoxicants, was an intelligent, active, capable, successful farmer until he attained that age at which men generally slow down or lessen their activities.

Many of the contestants' witnesses, in answers to hypothetical questions, expressed his or her opinion that at the time Godman signed and published his will he did not have sufficient mental capacity "to know the natural objects of his bounty, his obligations to them, the character and value of his estate, to make a rational survey of it and to dispose of it according to a fixed purpose of his own." The whole of the testimony,

when examined and analyzed, discloses no act, conduct, or statement of Godman when not actually under the influence of intoxicants, as the basis of the witnesses' opinions . The testimony of no witness certiorates the existence of a state of intoxication, or mental derangement, at or near the time of the execution of the will, or within a reasonable time either before or after its date, nor a continuation thereof, affecting his testamentary capacity. In re Hubbard's Will, 6 J. J. Marsh. 58; In re Cochran's Will, 1 T. B. Mon. 263, 15 Am. Dec. 116; Holliday v. Holliday, 161 Ky. 500, 171 S. W. 156; In re Harper's Will, 4 Bibb, 244.

In the Re Cochran's Will Case, the principle is stated that where the testator for some time before the execution of his will, and until his death, was in a general state of derangement, produced by intemperance, but with some intervals when he was of a disposing mind, evidence that the will was made in one of those lucid intervals was sufficient to sustain it; the burden being upon the contestee to establish it was executed during one of those lucid intervals.

In the Re Harper's Will Case, the evidence established occasional, habitual fits of intemperance, on the part of the testator, and also the want of domestic management and general bad conduct in the latter years of his life; yet we held that such was insufficient to show a want of testamentary capacity on his part.

While there is evidence establishing that Godman was subject to frequent, periodical intemperance, there is a total absence of evidence tending to establish permanent derangement of his mind, or that when he was not under the influence of liquor, he manifested symptoms of derangement. The testimony of Barton and Thompson that he was not under the influence of liquor in any degree at the time he executed the will is uncontradicted, except by such inference as can be adduced from the evidence showing he was an habitual drunkard. No fact or circumstance is disclosed by the testimony of a single witness upon which either the witness or the jury could base an opinion that Godman was not in full possession of his faculties when he signed his will.

The rule is that the mere opinions of witnesses are insufficient to take such case to the jury, unless the facts upon which their opinions are based tend to establish

a lack of testamentary capacity. See Dossenbach et al. v. Reidhar's Ex'x et al., 245 Ky. 449, 53 S. W. (2d) 731; Jones' Adm'r v. Perkins, 5 B. Mon. 222; Hudson v. Adam's Adm'r, 49 S. W. 192, 20 Ky. Law Rep. 1267; Sanders' Ex'r v. Blakley, 55 S. W. 10, 21 Ky. Law Rep. 1321; Langford's Ex'r v. Miles, 189 Ky. 515, 225 S. W. 246.

We have repeatedly stated the rule to be that non-expert opinions not supported by facts or circumstances which themselves tend to establish the testator's lack of mental capacity to execute his will are insufficient to authorize the submission of the case to the jury or to sustain its verdict. Wigginton's Ex'r v. Wigginton, 194 Ky. 385, 239 S. W. 455; Gilbert, etc., v. Osenton, etc., 201 Ky. 653, 258 S. W. 99; Franzman's Ex'rs v. Nalty et al., 208 Ky. 686, 271 S. W. 1034; Creech v. Creech, 208 Ky. 845, 272 S. W. 36; Young's Ex'r v. Toliver's Adm'r, 214 Ky. 769, 284 S. W. 389; Tombragel et al. v. Tombragel's Ex'r & Trustee, 232 Ky. 493, 23 S. W. (2d) 919; Russell v. Russell's Ex'r, 233 Ky. 105, 25 S. W. (2d) 54. In other words, where the facts and circumstances themselves which are narrated by the witnesses fail to show mental incapacity, the witnesses' opinions also predicated thereon are insufficient, whether the witnesses are experts or nonexperts. Broyles v. Able, 208 Ky. 672, 271 S. W. 1040; Dossenbach et al. v. Reidhar's Ex'x et al., supra. No medical testimony was introduced by either the contestants or the contestees.

Measuring the whole of the evidence of the contestants without considering that of the contestees, with the principles presented and stated in the cases, supra, the contestees plainly were entitled to a directed verdict.

Wherefore, the judgment is reversed, with directions to grant a new trial consistent herewith.