## Insurance Co. of North America et al. v. Creech Drug Store.

(Decided Feb. 25, 1936.)

F. M. DRAKE, and GORDON, LAURENT, OGDEN & GALPHIN, and JAMES SAMPSON for appellants.

FORESTER & CARTER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal presents for a second review the trial of an action of the Creech Drug Store, a corporation, to recover on certain insurance policies, insuring it in the amounts stated in the policies against loss by fire. See Insurance Co. of North America et al. v. Creech Drug Store, 256 Ky. 56, 75 S. W. (2d) 552, 554.

On a return to the circuit court, the insurance companies filed an amended answer on which they based a motion to transfer the cause to equity. A like motion was entered and the cause transferred to equity and judgment rendered, from which an appeal was taken and disposed of on the first appeal adversely to the insurance companies.

The insurance companies seem to have filed their amended answer and renewed their motion to transfer on the theory that in our former opinion the same motion was determined against them because there was no pleading on which it was based and that the right to have an action at law transferred to the equity docket is determinable on the pleadings, and, where neither the petition nor the answer presents an equitable issue, the transfer is erroneous.

It is true that we disposed of the motion to transfer on the former appeal on this ground. In so doing we did not say, nor mean to say, that, whenever an answer in the esteem of a defendant presents an equitable issue, a motion to transfer a common-law action to the equity docket should be sustained. In their amended answer, the insurance companies expressed their opinion of the questions to be determined in the case, and thus endeavored to bring their motion to transfer within the rule stated in subsection 4 of section 10 of the Civil Code of Practice and Annotation thereof.

The allegations of the amended answer on which the motion to transfer to the equity docket is based do not bring this case within the rule that a court of equity has concurrent jurisdiction in matters of accounts, where they are of such complex nature as to render the remedy at law, or, where there is serious doubt as to the true state of accounts and difficulty in

adjusting them, the jurisdiction should be exercised and the issue transferred to equity.

So to apply the above Code provision in such case would be equivalent to declaring that every action on an insurance policy where numerous articles of personal property or various portions of a building were damaged by fire is trialable only in equity. We are not prepared so to construe this code provision. To do so would result in depriving policyholders of the right of trial by jury. Commercial Union Assur. Co. v. Howard, 256 Ky. 363, 76 S. W. (2d) 246.

With this question of practice disposed of, the propriety of the decree awarding damages to the Creech Drug Store is the decisive one.

On a return of the case to the circuit court, it was tried on the evidence before us on the first appeal, supplemented by the depositions of D. C. Keller, Dr. Lynn Estes, Lewis Jackson, Dr. Kittinger, Nettie Forester, W. W. Eager, Frances C. Jones, and Oscar Paul. Of these witnesses, Estes, Kittinger, Keller, and Paul testified concerning the drugs and fixtures on hand at the time of and after the fire. Lewis Jackson testified relative to the fixtures and furniture on hand at the time of and after the fire.

An examination and analysis of the testimony of the new witnesses convince us that it is of the type and character considered and discussed in our former opinion in which we said:

"After the inventory was completed, S. B. Douglas, Dr. Kittenger, and M. R. Howard, within two weeks after the fire, were called by Eager 'to look over the stock and help determine' the damage. They had the inventory present, and, in the language of Douglas, 'they had not checked thoroughly, but checked some of the items on the inventory and found they were made correct'; they 'were satisfied the inventory seemed to be alright'; they made what they denominated 'an appraisal' as to what the damage to the drug store was by reason of the fire and water. In their opinions: 'In dollars and cents, the total damage to the fixtures and stock was $8,430.51.' The language of this wit-

ness is: 'The stock looked to be in very bad condition and the fixtures were damaged quite a bit'; they 'opened some (packages) and found some of the powder goods had caked and was hard, either by water or heat.' As to the liquids, they did not know 'whether the heat would affect them or not'; 'the books had gotten wet and were soiled'; 'noticed some (labels) on the bottles were soiled by water.' The three placed the value of the stock after the fire as being around 25% of the inventory and the fixtures around $1,500.00.' * * * [They] 'just made a general estimation of the stock and merchandise and decided it had been damaged 75%.' They did not check the inventory; merely 'looked around over the drug store, then estimated the damage'; 'accepted the inventory as being correct.' "

The fault with the testimony of the new witnesses as well as that in the record on the first appeal is their opinions were not based on the facts, and, whether experts or nonexperts, not supported by facts and circumstances which, themselves, are sufficient to authorize the submission of the issue to a jury or sustain a verdict or a judgment, their opinions are insufficient for such purpose. Godman v. Aulick, 261 Ky. 268, 87 S. W. (2d) 612. The testimony of the witnesses who were introduced on the first and those on the second trial establishes they made no sufficient examination, and had no sufficient knowledge of the drugs and fixtures to do more than merely fix in their minds a discount of the entire stock of drugs and fixtures.

Of such testimony, in our former opinion, we said: "Our summary of the testimony of the witnesses of the Creech Drug Store makes it plain that their estimation and fixing of the amount of damages were not based on the facts, but a casual, general observation."

The Creech Drug Store insists that this view of the testimony should not apply to that of Keller, Kittinger, Estes, and Paul, for the reason they had had years of experience in the buying and selling drugs before they testified. It is true their experience qualified them as expert witnesses, but their testimony shows they did not have a knowledge of the drugs and fixtures different

from or greater than that which the witnesses on the first trial had in respect thereto; in other words, the facts on which these new witnesses based their opinions are the same on which those who testified on the first trial based theirs. On this theory it can safely be said that the evidence on the second is the same as that on the first trial.

The rule is, where the facts and circumstances on the second trial are substantially the same as those on the first, our interpretation of them on the first appeal becomes the law of the case. Kentucky Road Oiling Co. v. Sharp, 257 Ky. 378, 78 S. W. (2d) 38.

In Louisville & N. R. Co. v. Cornett's Adm'r, 237 Ky. 131, 35 S. W. (2d) 10, we ruled that, where evidence was substantially the same on the second trial, this court's previous interpretation thereof constituted the law of the case and controlls the circuit court. Vanhoose v. Chesapeake & O. Ry. Co., 214 Ky. 594, 283 S. W. 953. The opinion on the former appeal, whether right or wrong, is binding alike on the parties and the courts. Robinson v. Chesapeake & O. Ry. Co., 227 Ky. 458, 13 S. W. (2d) 500; Louisville Fire Brick Works v. Tackett, 216 Ky. 712, 288 S. W. 665. The opinion on the former appeal is the law of the case in the same action, and precludes the lower court from considering the questions there decided. Preece v. Woolford, 200 Ky. 604, 255 S. W. 285. When this rule is applied, the evidence of the witnesses on the second trial being substantially that of those on the first, our view and disposition of such evidence on the first appeal is final.

Each of the policies on which a recovery is sought provides:

> "If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon," etc.

This provision of the policy imposed upon the Creech Drug Store the obligation as therein set forth. The requirement of this provision conferred a valuable

right on the insurance companies. The object and purpose of it was to impose the duty upon the insured to separate the damaged from the undamaged articles, immediately, and to protect the same from further damage, and to give notice to the insurers to afford them an opportunity to make an early and proper investigation into the cause and nature of the fire and the loss or injury, not only to learn and ascertain the facts in respect thereto, but also to protect itself from a possible fraudulent and fictitious claim. This case demonstrates the propriety and necessity of avoiding delay in the separation of the damaged from the undamaged articles and protecting the same from further damage.

The insurance companies by their policies obligated themselves to pay the insured in case of partial loss the difference between the sound market value of the insured articles immediately before, and the unsound market value immediately after, the fire. It is superfluous to say that an insured may greatly increase the amount of his recovery by deliberately failing or refusing to comply with the provision hereinbefore quoted, and thus defraud the insurance company. We said in our former opinion:

"It was the duty of the insurance companies, under the obligations of their policies, to pay such damages and no more." "The overhead ceiling of the building in which it was located was metal. The fire burned from above, a small space in the center of the building, causing the giving away of this space in the metal ceiling, through which fire dropped into the drug store. Excepting the fire thus entering the room where the drug store was located and the resulting heat and the use of water to extinguish the fire in the second story, the interior of the drug store was not otherwise actually damaged by the fire. However, some of the witnesses stated the heat was intense and the water poured into the drug store until it was from three to six inches deep on the floor."

Viewing this opportunity of the fire and water to damage the fixtures and furniture, if the same warped or fell to pieces, such necessarily resulted from the insured failing to comply with the provision of the policy in respect thereto. Also it is admitted that after the

fire the insured had the furniture and fixtures repaired and painted and began to and has continuously used the same in the drug business. We note that the insured and its witnesses have withheld from the court the cost of repairing and painting the furniture and fixtures, but rests its right to recover on the indefinite, uncertain, varying statements of witnesses that "the heat ruined a lot of stuff, 'destroyed the paint, varnish and glass' 'warped the fixtures, drawers, woodwork; the woodwork got hot and wet' ''; "before the fire stock and fixtures were in good condition.''

It is common knowledge that even furniture and fixtures, if wet or smoked during a fire, would not be in the condition immediately after the fire, which the Creech Drug Store attempts in this case to show the same were in about two weeks thereafter, and that such condition as existed at that time was produced by its failure to comply with the above provision of the policy with which the insurance companies are not chargeable.

It is admitted that after the fire the apparent condition of the stock of drugs was changed into a merchantable one by cleaning the same, and the insured at once began to and has continuously sold the drugs as merchantable, suitable for use and has conducted a general drugstore with the same stock on hand, adding thereto as needed from the time of the fire to present time. This action of the insured is utterly inconsistent with the opinions of its witnesses as to the damaged condition of the drugs, fixtures, and furniture, on which it now depends to sustain the judgment.

It is apparent that the insured wishes to disregard the quoted provision of the policy and is endeavoring to use the fire as a means of collecting the insurance policies because of its failure to perform its part of its obligation, imposed by the policies.

In our former opinion we said:

"The insurance companies introduced druggists of years of practical experience, based on special knowledge of the subject-matters about which they testified. Their qualifications as the facts disclosed by their opinions as to the sound and damaged values of the stock of drugs, fixtures, and supplies

on hand at the time they examined those of the Creech Drug Store. About five months had elapsed since the date of the fire and before their examination and inspection of the stock, fixtures, and supplies of the Creech Drug Store. From their testimony they devoted amply sufficient time to an examination and inspection of the stock of drugs, fixtures and supplies on hand. Their testimony disclosed a candidness and impartiality, authorizing the giving of weight to it. They fixed the reasonable amount of damage to the stock resulting from the fire, assuming to be correct the inventory thereof, as it was made by Estes, Whitehead, and Forrester, at $1,654.54 and the damage to the fixtures at $540."

This evidence is overwhelmingly convincing that the damages to the stock of drugs did not exceed $1,654.54 and to the fixtures not to exceed $540, and that the judgment in excess thereof was unauthorized by the evidence. The opinion evidence relied on by the Creech Drug Company is insufficient to overcome it.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.