## Hale et al. v. Hale et al.

June 17, 1941.

272

Fowler & Fowler for appellants.

Hunt, Bush & Lisle for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

J. S. Hale died in March, 1935, a citizen and resident of Fayette county, Kentucky. He left a will dated the 31st day of December, 1932, by the terms of which he directed the payment of his just debts and funeral expenses, and after making a special bequest to his nephew, Garland B. Hale, he devised all the rest and residue of his property to his nephews, Garland B. Hale, George C. Hale and Abram R. Hale, who are the appellees in this appeal. The will was duly probated by the orders from the Fayette county court and soon thereafter the appellants, Emma Hale, Warren Hale, Mrs. W. P. (Hale) Veal and Lutie Lee Hale, who also were nieces and nephew of the testator, appealed from the order of probate to the Fayette circuit court by filing their petition therein seeking to have the will set aside on the grounds of mental incapacity and undue influence. By subsequent pleadings the issues were made and a jury empaneled to try the issues thus presented and at the conclusion of the evidence for the contestants (appellants) the court directed the jury to return a verdict in favor of the contestees and from the judgment entered thereon dismissing the contestants' petition, this appeal is prosecuted.

The sole question presented is the sufficiency of the evidence to take the case to the jury.

Mrs. W. P. Veal testified, in substance, that the testator, who was her uncle, was severely injured in 1922 (nine years before execution of the will) in an automobile accident; she went to see him after the accident and he did not recognize her and appeared to be unconscious. He suffered a broken hip in the automobile accident, but there is no claim that he received any head injury which might be calculated to impair his mind. She further said that her mother died when she was twenty months old and thereafter she lived in the household with her uncle until she married at the age of twenty-three, and was considered "a daughter of the household." It further appears that the testator was very much displeased with the marriage of Mrs. Veal and for sometime he was

not very friendly with her, but she says he forgave her and during the latter part of his life he became friendly with her and treated her very kindly, and she visited him often and he was always glad to see her. It also appears that testator was friendly with his other nieces and nephews whom he omitted from his will. It also appears from the evidence that in the year 1932, sometime previous to the making of the will, testator was suffering from kidney trouble and was taken to a hospital and treated for that trouble, but it is not shown what effect, if any, it had on his mind. It appears that Mrs. Annie Hale, the mother of the beneficiaries of the will, was the housekeeper of the testator and it is claimed that she attempted to influence the testator in behalf of her sons to whom he devised his property. We find no evidence, however, tending to show any undue influence on the part of Mrs. Annie Hale or anyone else. Mrs. Veal says that Mrs. Annie Hale did not extend to her a very welcome accord when she visited her uncle and told her that she married against her uncle's will and that she could not see how she, Mrs. Veal, could care anything about testator or how testator could care anything about her. This is the only evidence indicating any disposition on the part of Annie Hale to prejudice testator against Mrs. Veal. It is not shown that Annie Hale made these statements in the presence of testator or said anything to him in regard to the disposition of his property. The age of testator is not shown except it is stated in brief of counsel for appellants that he was "a very elderly man."

Frank Christian testified that he talked to testator on occasions about his farm operations and his inability to look after it properly and that testator would "break down and cry," and that he was very nervous; he asked him what he was nervous about and he said he was having trouble of some kind and he asked him what kind of trouble he was having and he said that Annie (mother of appellees) was worrying him about going to Oklahoma, and further said that he did not want to go. The witness said that he suggested to testator that the trip might help him, and he said he did not see how it would help him when he felt so bad, and further said "No, I am not going, no matter what they say" and then began to cry and said "I've got to go. You know how women are, they worry you until you do what they want you to" and then he cried again. It is not shown that he did

go to Oklahoma, and apparently his will and desires prevailed, rather than being persuaded to go against his will.

Referring again to the evidence of Mrs. Veal she said that testator seemed to be worried about some debts he owed, including $450 he owed George Hale, and that he wanted to sell some of his property to pay his debts but George advised him not to sell the land and had him to take it off the market.

The witnesses, or a number of them, were asked hypothetical questions based upon their observations of testator and his conduct indicated above, as to whether or not in their opinion he was competent to make a will and they answered in the negative. Only one witness, however, confined the time to December 31, 1932, at the time the will was executed.

It appears that testator was taken to the hospital to be treated for the injuries received in the automobile accident in 1922, and also for treatment for kidney ailment in 1932, previous to the execution of the will, but peculiarly, appellants offered no medical testimony of the doctors who treated him or other hospital attendants. They rely solely upon the evidence and opinions of the lay witnesses mentioned above and others whose testimony was along the same line but not as strong as the evidence of Mrs. W. P. Veal and Mr. Christian.

On cross-examination Mrs. Barbara Denny testified that she was housekeeper for testator and had a contract with him to pay her certain compensation, and that he paid her according to contract and that he looked after his farm, contracts with his tenants, and the selling of his farm products. It appears from her testimony on cross-examination that testator was active and competent to look after his own business. Mrs. Frank Hale gave like testimony in reference to the operation of his farm and looking after his personal affairs. It also appears that testator transacted a banking business in the way of borrowing money, renewing his notes, and looking after his affairs in the usual way. Appellants also stress the fact that testator devised all his property to appellants but left out of his will appellees who were the same relation to him as the contestees.

Inequality is a circumstance to be taken into consideration on the question of mental capacity and undue

influence where there is other evidence of a substantial nature encoupled with it. However, inequality alone is insufficient to create the presumption of incapacity or undue influence. Watson's Ex'r v. Watson, 137 Ky. 25, 121 S. W. 626; Bottom v. Bottom, 106 S. W. 216, 32 Ky. Law Rep. 494; Clark v. Young's Ex'x, 146 Ky. 377, 142 S. W. 1032.

At the most we think the evidence is sufficient to create only a suspicion that testator might have been more or less mentally infirm and susceptible to undue influence. But, as we have noted, there is no evidence of undue influence, but perhaps an opportunity for undue influence on the part of Annie Hale, which alone, in the absence of any evidence that undue influence was actually exercised, is insufficient to take a case to the jury.

Viewing the evidence in the light most favorable to appellants, we think it was insufficient to support a verdict if the case had been submitted to the jury and a verdict returned against the will. In such case the court is not bound to submit the case to the jury, even though there may be a slight trace of evidence, or scintilla, which is insufficient to support a verdict. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877.

For the reasons stated it follows that the trial court properly directed a verdict in favor of appellees.

Judgment affirmed.