## Poole et al. v. Stansbury et al.

June 19, 1942.

Robert Hubbard for appellants.

Hubert Sirles and James P. Miller for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment on a directed verdict for contestees on the trial of a contest of the will of the late Mrs. Anne Stansbury.

The contestants are a half sister and nieces and nephews, children of a full brother who died after testatrix. The testatrix had been a widow for a number of years when she married Squire Hubert Stansbury in November, 1939. She was 64 and he 57 years old. She had been an intimate friend of his daughter for several years and had become acquainted with him before his first wife died in 1936. They lived in Buechel, a suburb of Louisville, when she died June 26, 1940.

Mrs. Stansbury had been in a hospital in the beginning of the year suffering from some intestinal obstruction, probably caused by tumor or cancer. She had recovered sufficiently to go home in March, and in April to visit with her husband and daughter at her brother's home in Indiana. In May she became ill while on a short trip to Stansbury's old home in Nelson County. But a few days later, she attended the races. On May 18th she was again taken to the hospital. During this time it appears she was given opiates to ease her pain, and there is testimony that she did not then have testamentary capacity by reason thereof. She returned home on May 28th and continued ill; but she received callers without discrimination and displayed an interest in everything going on. On June 15th Stansbury went across the road to a cafe and told the proprietor, E. J. Schmitt, a long-time friend of Mrs. Stansbury, that she wanted to have a will written. Hubert Sirles, an attorney, happened to be there and Schmitt suggested that "there was a man who would write it." Mr. Sirles, who knew the parties, went to the home and was told by Mrs. Stansbury, in a clear and explicit manner, how she wanted to dispose of her estate and why she did so. Mr. Sirles went to Schultz's florist establishment, where his niece, Miss Lillie Keefe, had been employed as an assistant manager for many years, and who knew Mr. and Mrs. Stansbury quite well. She typed the will and returned with Mr. Sirles to the home. It was read over to and also by Mrs.

Stansbury as she sat up in bed. She called attention to the fact that her name had been spelled "Anna" instead of "Anne," and also referred to Mrs. Carrie Rogowsky, a beneficiary, as "my sister's niece" instead of her sister's stepdaughter. She asked that those corrections be made and they were. She talked about her family and their financial conditions and stated that her husband had spent his money on hospital and doctor's bills and was entitled to what she had. Neither he nor his daughter was there. The will was signed and witnessed by Sirles, Schmitt and Miss Keefe, all of whom testified that her mind and understanding was clear and that she had testamentary capacity according to the conventional criterion. The will is prefaced with a statement of that criterion. After providing for the payment of testatrix' debts and funeral expenses, it bequeathed some dishes, etc., including "all silverware I have with the initial 'R' printed thereon" to Mrs. Rogowsky. Paragraph 3 is as follows:

"My brother, Robert Mullins and my three nephews, Forest Mullins, William Mullins, and Lloyd Mullins, and my two nieces, Ethel Mullins and Pearl McGuirk being my nearest blood relatives and in good circumstances I leave my best wishes."

The other paragraph devised all the rest of her property to her husband and appointed him as executor without surety on his bond.

While some relatives and friends testified to some circumstances and incidents which occurred during this last illness that would seem to indicate mental incapacity, they really disclose only a sick woman, somewhat despondent. Their opinions as to lack of testamentary ability are of no probative value.

The plaintiffs introduced two doctors. Dr. Herzer who had attended Mrs. Stansbury off and on for several years, and particularly when she was in the hospital in January and February, described her physical condition then. He had advised a surgical operation which she declined to undergo. The doctor discusses the toxic result of a condition such as Mrs. Stansbury's and its effect and the effect of opiates which had been administered to her. He also had "glanced over" a copy of Mrs. Stansbury's hospital record when she was there the second time in May and discussed her condition and the

effect of opiates then given her as disclosed by the chart. It appears that Dr. Herzer did not attend her at that time. In answer to a hypothetical question submitted by the contestants describing Mrs. Stansbury's condition the morning of the day the will was written, June 15, 1940, the doctor expressed the opinion that it would have been possible for her to have been aroused and to have carried on a normal conversation in the afternoon when it was executed. He expressed the opinion that she had not had testamentary capacity when he had seen her last in February, 1940, at the hospital, because of her toxic condition and the fact that she could not make up her mind for sometime whether or not to undergo the surgical operation. He was of opinion from an examination of the hospital chart made during her second stay at the hospital that the toxic condition had continued. Finally, in response to an elaborate hypothetical question— which somewhat stretched the facts as disclosed in the record—the doctor declined to answer definitely whether the testatrix had testamentary capacity, "not being in possession of more of the facts," although it seemed to him that "if she thought of her half sister and her jewelry she would have mentioned it in the will." Dr. Heman Humphrey, called as an expert witness, having submitted to him the hospital chart, gave his diagnosis of Mrs. Stansbury's illness as being a cancer, and in answer to a hypothetical question said he thought it unlikely that she "would know and be able to reason and think properly as to what she ought to do in the disposition of her property."

As to the testatrix' jewelry the omission of its mention in the will being suggested as an element proving lack of capacity, it was developed that after the funeral, Miss Louise Stansbury, her stepdaughter, gave the jewelry to testatrix' oldest niece, saying that it was her aunt's request that she do so that it might be divided among herself and her sisters and sister-in-law.

The evidence, as usual in such cases, took a wide range. There is much more than we have mentioned but it is of little relevance. The law of wills is well settled and need not be repeated here. This is simply a case in which the quality of the evidence only is to be considered. The medical testimony is not sufficient and the facts detailed by the laymen fall short of being enough to induce a conviction of mental incapacity and undue influence.

An argument of incapacity and undue influence is based upon the circumstances of inequality and an unnatural disposition because of the poor financial condition of testatrix' half sister, who lives in Arkansas. However, there are forceful countervailing circumstances. The record does not disclose the value of the estate although it is described, but appellees say in their brief it is worth about $7,500. Another argument of undue influence rests upon claimed inattention by Stansbury of his wife's family in having failed to keep them advised of her condition. They were advised on June 4th by his daughter. We think the court properly ruled in sustaining a motion for a peremptory verdict in favor of the will. Bodine v. Bodine, 241 Ky. 706, 44 S. W. (2d) 840; Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. (2d) 731; Godman v. Aulick, 261 Ky. 268, 87 S. W. (2d) 612; Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877; Rueff v. Light, 272 Ky. 449, 114 S. W. (2d) 506; Karr v. Karr's Ex'r, 283 Ky. 355, 141 S. W. (2d) 279; Higgs' Ex'x v. Higgs' Ex'x, 286 Ky. 236, 150 S. W. (2d) 681; Hale v. Hale, 287 Ky. 271, 152 S. W. (2d) 984.

The judgment is affirmed.