## Phillips v. Johnson et al.

December 17, 1946.

P. B. Stratton for appellant.

E. J. Picklesimer for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

Martha Phillips died testate on the 22nd day of February 1944, a citizen of Pike County. Her will was executed on April 26, 1938, when she was about seventy-six years of age. Her husband and several children survive her.

The will was probated on March 9, 1944, and this contest proceeding was filed the following July. The grounds of attack are mental incapacity and undue influence on the part of her son, W. T. Phillips.

This will leaves practically all of the estate to W. T. Phillips. The other children were left $1.00, with the exception of two daughters to whom she left a small amount of real estate. The will contains statements concerning monies advanced to some of the children, and appoints W. T. Phillips as executor, with the request that he be allowed to qualify without surety on his bond.

The evidence discloses that Martha Phillips and her husband, G. W. Phillips, lived about fifteen miles from Pikeville on the head of Johns Creek in Pike County. The record does not disclose the value of the estate but it does appear that for many years prior to her death the testatrix and her husband operated a small country store and owned a farm of 211 acres from which they sold, in 1929, a right of way to a railroad company for the sum of $5500.00. Two of their sons died while in the armed forces during World War I. The proceeds of their insurance were paid to their mother in monthly installments, all such installments having been paid prior to the time her will was executed. According to W. T. Phillips the proceeds from these insurance policies were used to acquire a clear title to the farm on which his parents lived. It seems there was some litigation over the title to this farm and this money was used to purchase the interest of other parties.

Mrs. Phillips appears to have been an active, hard working woman, working at times on the farm and more or less regularly as a clerk in the store which she and her husband operated.

The record shows that the son, W. T. Phillips, has lived with his mother and father since shortly after his marriage, and it appears that he managed the farm for them and in later years assumed control and management of all his mother's affairs. He handled all of the credit accounts at the store and his mother depended upon his judgment as to whom credit should be extended, both in the operation of the store and in lending money to neighbors. Since 1938, G. W. Phillips, the husband

of testatrix, has been more or less physically incapaci-tated, due apparently to some kind of partial paralysis.

The relationship between the testatrix and the other children is not clearly shown by the record, but these other children had homes of their own and seldom visited their parents. It is entirely clear that W. T. Phillips was closer to his parents than any of the others and that his mother looked to him for guidance in the manage-ment of her affairs.

Much testimony was taken but none of it shows, or even tends to show, that Martha Phillips did not possess the mental qualifications necessary to make a will. The trial court submitted the case to the jury under instruc-tions which allowed the jury to consider both undue in-fluence and lack of mental capacity. The jury found that the writing was not the last will of Martha Phillips. There is no basis whatever for the instruction as to the mental capacity of the testatrix, and the submission of this theory to the jury was clearly error. Welch's Adm'r v. Clifton, 294 Ky. 514, 172 S. W. 2d 221, 148 A. L. R. 1220.

A more troublesome question is presented as to whether there is sufficient evidence of undue influence on the part of W. T. Phillips to submit that issue to the jury. There is an attempt made to show that the testa-trix lived in fear of W. T. Phillip's displeasure, and some witnesses testified to expressions by her which might so indicate, but, as we read the evidence, these expressions do not necessarily mean that. For example, one witness testified that she purchased some articles from the testa-trix at the store and that an error was made in calculat-ing the amount due. When this was called to the atten-tion of the testatrix she said: "Hush, don't tell Will, he will kill me." Another witness testified that when he purchased some articles at the store the testatrix gave him more change than he was entitled to and that when he called her attention to that fact she said: "Lord, don't tell Will."

The evidence indicates that she always deferred to W. T. Phillip's judgment about all business matters in-stead of the judgment of her husband, and it seems quite clear that this son had the final say about all of the busi-ness matters.

We do not think that this evidence indicates that the testatrix feared her son to the extent claimed by the appellees. Doubtless she disliked to incur his displeasure, but there is no evidence which indicates to us that her relationship with this son was the result of any fear on her part. On the other hand, we feel that due to the long years of close association, the testatrix had learned to respect the wishes and judgment of W. T. Phillips to such an extent that she depended upon him for advice about most of her affairs. We are unable to get more than this from the record.

The evidence, we think, establishes clearly that W. T. Phillips had the opportunity to exercise influence over his mother, but mere opportunity to exercise influence does not warrant annulling the will on the ground of undue influence in the absence of evidence showing that such influence was actually exerted and exercised. Kidd v. Rodfus, 241 Ky. 133, 43 S. W. 2d 501; Rueff v. Light, 272 Ky. 449, 114 S. W. 2d 506; Hale v. Hale, 287 Ky. 271, 152 S. W. 2d 984; Kiefer's Ex'r v. Deibel, 292 Ky. 318, 166 S. W. 2d 430, and Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. 2d 220. In the last cited case we said: "Suspicion or conjecture is never sufficient to constitute evidence."

In Bodine v. Bodine, 241 Ky. 706, 44 S. W. 2d 840, we held that undue influence to authorize setting aside of a will must be such influence as obtains dominion over the mind of the testator to the extent that it destroys every chance of the exercise of his own will on his part, and which constrains him in respect thereto, to do that which he would not have done if left to the free exercise of his own judgment.

Assuming, as we have, that the proof establishes an opportunity for W. T. Phillips to exercise undue influence over his mother in the disposal of her property, we must, under the principles referred to, determine if there is any substantial evidence which indicates that such influence was actually exercised. The only evidence bearing on this point is the evidence concerning the circumstances under which the will was executed. The facts are as follows:

The testatrix advised her son, W. T. Phillips, that she desired to make her will. At the suggestion of his

attorney he discussed the matter with his mother and made a written memorandum as to how she wished to dispose of her property. Following this he conferred with the attorney and from these notes, and from what his mother had told him, the will was drafted. After the will was prepared it was delivered to the testatrix who advised her son that she wanted .the two men who witnessed the will to act in that capacity. He contacted these two persons and at his request they came to the home of the testatrix where the will was signed by her and by the two witnesses at a 'time when W. T. Phillips was not present. There is a conflict in the testimony as to how the presence of the two witnesses was arranged for, but since several years had elapsed between the time the will was executed and .the time of the trial, these discrepancies may.easily be blamed on faulty memories. After the will was duly executed the testatrix delivered it to her son who placed it in a trunk belonging to the testatrix, where it remained until after the testatrix's death, which occurred nearly six years thereafter. W. T. Phillips testified positively that he did not attempt to. influence his mother in disposing of her property, and his testimony concerning the manner of making this will is the only testimony in the record about it except the testimony of the two attesting witnesses who say that he was not present at the time the will was signed.

Under these circumstances we are unable to say that there is any testimony which shows facts and circumstances from which the jury would be authorized to infer that undue influence was exercised on his mother by W. T. Phillips.

In Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. 2d 877, 883, what was known as the scintilla rule was completely abrogated and the rule of practice replacing that rule was.declared in the following terms: ''When the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant.''

The law permits the owner of property who is of sound mind to transmit his property by his will in such

manner as he pleases, and juries are not permitted to make a will for him that agrees with their ideas of what is right and just, nor will they be permitted to speculate away the right of a testator to dispose of his property in accordance with desires of his own. It is claimed that the will under consideration here is an unnatural one. We do not so regard it. The close relationship between the testatrix and the son who was favored in her will is a reasonable basis for the terms of the will. This son seems to have devoted most of his life to the attention of his mother's affairs, and certainly the other children were not so close to their parents. The evidence does indicate that during her life time the testatrix had financially assisted some of the other children, and this fact is mentioned in the will.

After a careful examination of all the evidence we are of the opinion that it is insufficient to support the verdict of the jury, and this being true, under the rule announced in Nugent v. Nugent's Ex'r, supra, the trial court should have directed the jury to return a verdict upholding the will. The cause must be reversed for a new trial, and if the evidence is substantially the same at that trial the court, if requested, will give that instruction.

Wherefore, the judgment is reversed for proceedings consistent herewith.